ANNIE S. DAVIS *vs.* INHABITANTS OF ROCKPORT.

Essex.    November 6, 1912. — January 27, 1913.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON & DeCOURCY, JJ.

*Municipal Corporations,* Liability for torts when engaged in business for profit.

A municipality has the power to let for profit real estate held for public purposes and not needed at the time for such purposes.

If a town, holding common land within its limits on a bluff facing the sea, which is not required at the time for any public purpose, lays out such land in house lots, which it leases to tenants for a substantial rental, this is not *ultra vires,* and the town is liable to one of its tenants, in the same way that a private

owner would be, for injuries sustained by reason of its negligence in maintaining a defective and dangerous plank walk for the common use of such tenants.

TORT against the town of Rockport for personal injuries sustained by the plaintiff by reason of the defective condition of a plank walk at Long Beach in the possession and control of the defendant as a landlord, when the plaintiff was passing over the walk as the guest of her son, who was the lessee from the defendant of certain of the lots of land referred to in the opinion, one of which was bounded by the way twelve feet in width there mentioned. Writ dated September 1, 1910.

In the Superior Court the case was tried before *Raymond,* J. The material facts shown by the evidence are stated in the opinion. By agreement of the parties the case was submitted to the judge and not to the jury. The judge ruled that the defendant was not liable and found for the defendant. He reported the case for determination by this court, with a stipulation of the parties, that, if the ruling of the judge was wrong or if the jury could have found for the plaintiff on all the evidence, judgment should be entered for the plaintiff in the sum of $750 as of October 3, 1911; otherwise, that judgment should be entered for the defendant.

*W. A. Pew,* for the plaintiff.

*C. H. Cleaves,* for the defendant.

HAMMOND, J. There was evidence that at the time of the accident the plank was in the possession and under the control of the defendant, that it was in a defective and dangerous condition, that this condition was known by the defendant and might have been remedied before the accident by the exercise of due care on the part of its officers or agents, and that the plaintiff, being in the exercise of due care, while passing over the walk where "as the guest of her son she had a right of way by invitation or inducement of the" defendant, was injured by reason of the defect. There can be no doubt that in this state of the evidence the plaintiff would have been entitled to go to the jury if the defendant had been a private person or (with some few exceptions not here material) a private corporation; and the defendant has not contended to the contrary.

But the defendant contends that it is a quasi corporation invested with certain powers and charged with certain duties,

all public and limited in their nature, and that the acts upon which the plaintiff relies to hold the defendant were *ultra vires,* and hence it is not answerable. It becomes necessary to examine with some precision the relation sustained by the defendant to this walk.

The defendant owned about forty acres of upland and beach, all situated within the territorial limits of the town. The land was bounded on the south by the sea about twenty-five hundred feet. Fronting the beach was a sand bluff varying in height from two to eight feet, the remaining land being soft marsh and tidal ponds. Before the time of the accident the town had caused this bluff to be surveyed and laid out into house lots and plans to be made preparatory to leasing the land to persons desiring to rent summer cottages. These plans showed "[one] hundred and eighty house lots, in four tiers of lots," and open spaces, some running parallel with the beach and some substantially at right angles with it, designated as roads. A passageway, twelve feet wide along the top of the bluff and between the front tier of lots and the beach, was reserved by the town, and at the time of the accident was in the possession and under the control of the defendant. This was used, and intended by the defendant to be used, as a common passageway to and from the various lots and along the beach front.

The defendant leased the respective lots for a period not exceeding ten years, receiving a substantial rental therefor, and at the time of the accident there were outstanding leases of about one hundred lots, and about seventy houses had been constructed by the tenants. In a part of the twelve foot reservation above mentioned a plank walk had been laid by tenants in front of their lots, and some of the tenants had protected their property by building bulkheads along the front of it. One of the streets which ran from the front passageway towards the interior was called "14th Street," running between the two front lots numbered respectively thirteen and fifteen. In the spring of 1910 a part of the bank and the plank walks in the vicinity of 14th Street were washed away by a high tide during a storm, leaving a chasm five or six feet deep and of the whole width of the street, where it joined the reservation above named. Over this chasm was constructed by the defendant the defective and dangerous walk where the plaintiff was injured.

Briefly stated, the defendant laid out the bluff into house lots and ways with a view to leasing the lots to persons who might erect summer cottages, and at the time of the accident about seventy houses had been erected by tenants under leases made by the defendant. The ways including the place where the accident occurred had not been leased, nor was it intended by the defendant that they should be. There is no question that everything which was done in the name of the defendant was authorized by it so far as respects the form and substance of the votes. Were the votes and the action thereunder *ultra vires?*

The land was "common land which belonged to the town, and had never been sold or divided." The only use ever made of it was that "some of the thatch on the back part had been sold, and the public had used the beach for bathing purposes. The bluff had never been used for any public or municipal purpose." By this language we understand that this was land within the limits of the town which had not been granted by the government of the colony either to the town or to individuals. The tenure under which such land is held by the town is set forth by Gray, C. J., in *Lynn* v. *Nahant,* 113 Mass. 433, 448, as follows: "[Such lands are] not held by the town as its absolute property, as a private person might hold them, but, by virtue of its establishment and existence as a municipal corporation, for public uses, with power by vote of the freemen of the town to divide them among its inhabitants, yet subject to the paramount authority of the General Court, which reserved and habitually exercised the power to grant at its discretion lands so held by the town. *Commonwealth* v. *Roxbury,* 9 Gray, 451, 500. *West Roxbury* v. *Stoddard,* 7 Allen, 158, 169, 170. *Tappan* v. *Burnham,* 8 Allen, 65. *Boston* v. *Richardson,* 13 Allen, 146, 149, 150, and 105 Mass. 351, 357. 1 Mass. Col. Rec. 240, 271, 277, 305, 310, 327. 2 Mass. Col. Rec. 61. 4 Mass. Col. Rec. pt. ii. 10, 109, 111."

The land was held by the town for public purposes. But it does not appear that during the time covered by the acts of the defendant as hereinafter set forth there was any public purpose for which it was needed or to which it could have been appropriately devoted. The defendant then found itself in possession of real estate more and other than what was required for the then present needs of the town. It was in the situation in which the town of Quincy

was when its city hall was larger than was required for the time being for use as such, and when it let for profit the unused part of the building for business purposes (*French* v. *Quincy*, 3 Allen, 9); in the condition in which the city of New Bedford was when it let for profits parts of its city hall under like circumstances (*Worden* v. *New Bedford*, 131 Mass. 23). In each of these two cases the defendant was held to stand in the position of a private owner. The principles upon which the question of the liability of the municipality turns were set forth in the last case above cited, in the following language (p. 24): "A city or town is not liable to a private citizen for an injury caused by any defect or want of repair in a city or town hall or other public building erected and used solely for municipal purposes, or for negligence of its agents in the management of such buildings. This is because it is not liable to private actions for omission or neglect to perform a corporate duty imposed by general laws upon all cities and towns alike, from the performance of which it derives no compensation. But when a city or town does not devote such building exclusively to municipal uses, but lets it or a part of it for its own advantage and emolument, by receiving rents, or otherwise, it is liable while it is so let in the same manner as a private owner would be."

It can make no difference that the portion let is a part of a building or of land. The principle upon which in each of these two cases the defendant was held is applicable here; and it may thus be stated in a general form. A municipality has the power to let for profit real estate held for public purposes and not needed for the present for such a purpose. It is not compelled to let the property lie idle. While it may not expend money to go into business, it may lease the property on reasonable terms and receive the rents. If some minor expense is needed to make the property rentable, such for instance as for a new key, a new blind or new steps in the case of a building, or for suitable ways in the case of vacant land either by levelling the land or making plank walks, such expense within reasonable limits may be legally incurred.

We see nothing *ultra vires* in the acts of the defendant. It either could allow the property to remain unused or it could let the same or any part thereof for profit. If it took the former course, it

was answerable only as a municipality in possession of property intended for public use. If it took the latter course then it became answerable as a private owner. See in addition to the cases hereinbefore cited, *Oliver* v. *Worcester*, 102 Mass. 489; *Little* v. *Holyoke*, 177 Mass. 114; *Davies* v. *Boston*, 190 Mass. 194, and cases cited. It follows that by the terms of the report upon which the case is submitted to us there should be, and it is hereby so ordered,

*Judgment for the plaintiff for $750.*