# MARY A. O'KEEFE & another *vs.* MARY M. SHEEHAN & others.

Essex.   December 8, 1919. — April 1, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

*Equitable Restriction. Equity Jurisdiction,* To enjoin violation of equitable restriction, To enjoin violation of municipal ordinance. *Nuisance. Municipal Corporations,* By-laws and ordinances.

In a suit in equity to enjoin the defendant from violating an equitable restriction, the following facts appeared: The plaintiff and the defendant owned adjoining lots, acquired by mesne conveyances from a common grantor and subject to a restriction "that neither the grantee nor his heirs or assigns shall carry on any trade or business upon said lot that shall be in the nature of a nuisance to the abutting owners or neighborhood." For some years the defendant carried on a contracting business, beginning in 1908 and gradually increasing, and maintained a stable upon the premises, which use of the land was a nuisance to the plaintiff. The plaintiff had not acquiesced in such use of the premises nor given the defendant any reason to believe that he would be satisfied with it. The stable was destroyed by fire in 1915, and the plaintiff notified the defendant in substance that, if any attempt were made by him to resume the former business on the premises, or otherwise to violate the terms of the restriction, it was the plaintiff's intention to seek an injunction. The defendant replied that he intended to reconstruct the stable and to carry on business as before, and procured a municipal license to build and use a stable for fifty horses upon the premises. The plaintiff instituted his suit in February, 1916, and it was referred to a master. On March 25, 1916, the defendant's stable was completed and occupied. The hearings before the master began on March 27 and ended on June 13, 1916. The master filed a report on March 6, 1918, in which he found in substance, that the evidence upon the question, whether the use of the stable was "in the nature of a nuisance," was "not very complete nor very satisfactory," that "it could hardly be otherwise," and that he could not see "how any one can tell how this will be until a fair trial of the new arrangements is given." *Held,* that

(1) The plaintiff was not prevented from maintaining the suit by laches, waiver or acquiescence;

(2) The negative findings of the master upon the question whether the defendant's use of the premises was a nuisance required that the bill be dismissed without prejudice and without costs.

An owner of land cannot maintain a suit in equity to enjoin the erection of a building upon adjoining land which is in violation of a municipal ordinance if such structure is not in itself noxious nor unusually dangerous nor in violation of the private rights of the plaintiff.

BILL IN EQUITY, filed in the Superior Court on February 14, 1916, seeking to enjoin the defendants from violating an equitable restriction, described in the opinion, contained in a deed of land in Lynn owned by them and adjoining land of the plaintiffs, and from violation of a municipal ordinance relating to the erection of buildings.

In the Superior Court the suit on March 27, 1916, was referred to a master, who filed a report on March 6, 1918. Findings of the master on the question of laches were as follows:

"When the defendant David J. Sheehan bought the property at 424 Broadway in the summer of 1907 he told John A. O'Keefe, who then lived at 414 Broadway, that he was going to make a start there in the contracting business and see what he could do. He began in a small way but gradually increased until he is now doing a very substantial business. In 1908 he built the first extension of his stable. No notice of the application for the license to build this stable was given to any of the plaintiffs, who were not then owners of adjoining property. O'Keefe, however, knew that at the time the foundations were built there was to be a barn erected upon the premises.

"After the first extension was built and before the O'Keefe family moved from 414 to 418 Broadway in 1911, they began to be troubled by the odor, noise and flies from this first extension, and continued to be so annoyed by these causes for several years before 1911. During this time O'Keefe had from time to time complained to Sheehan about the barn. It does not appear that he brought any proceedings to enforce the restrictions and it is admitted that he never called Sheehan's attention to the restrictions in question. He (O'Keefe) knew of the restrictions when he bought number 414 Broadway in 1886.

"In 1911 the O'Keefe family moved to No. 418, adjoining the Sheehan premises. The odors from the barn were then noticeable and annoying. O'Keefe complained of the odor to Sheehan, who consequently bricked up a window in the basement of the stable which opened toward the O'Keefe house. This made the odor less objectionable, but it still remained. In the spring of 1912 the second addition was built. O'Keefe was not notified of the application for leave to build this erection, which was granted in April, 1911, before he bought the adjoining premises, number 418 Broad-

way. But before the second addition was begun in the spring of 1912, the O'Keefe family had removed to number 418 and knew that the building was going up and what it was to be used for. Mr. O'Keefe then looked up the records of the Board of Health and learned the date when the license was issued. He then talked with Sheehan about the odor from the stable, who said that he proposed to do all he could to stop it.

"As Sheehan's business increased after the erection of the second addition the annoyances became more noticeable. From time to time O'Keefe complained to Sheehan. Sheehan on several occasions gave O'Keefe to understand that he was contemplating moving his stable down town. Up to 1914 there had been no unpleasantness between them, but in that year, as the result of the building of a fence by O'Keefe to shut out the view of the stable door from his house, some differences arose as to whether the fence was on the correct line. O'Keefe then told Sheehan that he had made his place such a nuisance that it was necessary for him (O'Keefe) to have the fence. O'Keefe also about this time began to draft a bill in equity for an injunction but never filed it.

"Besides the stable the defendant Sheehan built on the lot in question in 1912 and 1913 an open shed for the storage of carts, at a cost of about $600. Also a small office building costing perhaps $400, and a storage shed costing about $2,200.

"The above are substantially all the facts upon which the question of laches and acquiescence is to be determined, which is a mixed question of law and fact and perhaps not within the province of a master to determine. From these facts and the inferences to be drawn from them I find that when the defendant Sheehan set up in the contracting business at 424 Broadway, it was not the intention of John A. O'Keefe, who then owned number 414 to insist that the restrictions forbade such a business as was then conducted; that from time to time, although he complained of the increasing annoyances due to the growth of the defendant's business and the additions to the stable, he still had no definite intention to enforce the restrictions by suit, partly from a desire to go as far as a proper sense of friendliness would urge in the recognition of the defendant's rights and interests and partly because of a hope created by the defendant's statements that he intended at some time to remove his business to another location. The erec-

tion of a stable did not necessarily involve a violation of the restriction. In that respect the failure of O'Keefe to object to the building of the stable is to be taken with a different significance from the failure to make timely objection to the erection of a building which is a plain and certain infraction of the terms of a restriction. Whether a stable is to be a source of annoyance to a neighborhood or not depends upon how it is used. The same thing may be said of a contracting business. A willingness to suffer some inconvenience and annoyance from a stable at the hands of a friendly neighbor who sincerely professes to be anxious to remove all cause of complaint ought not, I think, to be interpreted as general leave and license for the infliction of any amount of annoyance and discomfort. Such conduct cannot fairly justify the party causing the annoyance in believing that the other is satisfied permanently to tolerate substantial annoyances materially interfering with the ordinary comfort in the occupation of his home. The principal ground on which the defence of laches is sustained by the courts is that it would be unfair to a defendant to wait a long time while he is making his arrangements and adjusting his business and property to conditions which he has reason to believe will be permanent because he deems them in conformity with law or satisfactory to others and then to make an attack upon him and require him to undo that which he has done innocently and at great cost.

"I can see nothing in this case that could fairly have given Sheehan reason to believe that the plaintiffs would be satisfied with such a use of his premises in his business as would constitute a nuisance to them; nor to believe that they had abandoned the right to an injunction restraining in terms such a use, which I take it would be substantially the form of injunction in this case if the plaintiffs should get one. So far as I have the power, therefore, I find that the plaintiffs are not prevented in this case by laches, waiver or acquiescence."

Other facts found by the master are described in the opinion.

The suit came on to be heard by *Hammond,* J., in the Superior Court, and by him was reserved for determination by this court upon the pleadings, the master's report and the defendants' exceptions thereto.

*H. A. Bowen,* (*S. Parsons* with him,) for the defendants.

*B. B. Jones,* for the plaintiffs.

PIERCE, J. Upon a reservation from a judge of the Superior Court, this case is before the full court upon the pleadings, the master's report, and the defendants' exceptions thereto. It is a bill in equity wherein the plaintiffs seek to have the defendants restrained and enjoined from using or permitting the use of certain premises for stabling horses, or for the purposes of a general contracting business in violation of certain restrictions upon the use of the defendants' premises, which restrictions the defendants concede attach to their premises and the premises of the plaintiffs, and enure to the benefit of the premises of both plaintiffs and defendants. The plaintiffs also seek a mandatory injunction commanding the defendants to remove such portion of a stable upon the premises of the defendants, as has been erected at a distance of less than three feet from the boundary line of the premises of one of the plaintiffs, in violation of an ordinance of the municipal council of the City of Lynn passed on May 23, 1911.

Previous to 1881, one Batcheller owned a tract of land in Lynn, Massachusetts, which by reason of its locality and for other reasons was adapted to residences of the best class, if its availability for such purposes as a tract should be preserved by suitable restrictions. Between 1881 and 1883, he divided this tract into lots and sold certain of them (hereinafter called A, B, and C) to the predecessors in title of the lots now held and occupied by the several plaintiffs and defendants. Each of the original conveyances and all the mesne conveyances in the several chains of title from the first grantor to the last grantee were granted subject to the following restrictions: "This deed is granted upon the conditions . . . that neither the grantee nor her heirs or assigns shall carry on any trade or business upon said lot that shall be in the nature of a nuisance to the abutting owners or neighborhood." Lots A and B are owned by the plaintiffs. Lot C is owned by one of the defendants. Lot A adjoins lot B, and lot B adjoins lot C. There is a stable on lot C distant seventy-six feet from lot B and one hundred and eighteen and one half feet from lot A.

When the defendant Mary F. Sheehan took title to lot C, in 1907, the buildings thereon consisted of a dwelling house and a

small private barn. Her son, the defendant David J. Sheehan, in 1907 started out to do business for himself, on lot C, as a contractor and builder. Before the license was granted in July, 1907, he kept in the barn two horses; and, during the period covered by the license, three horses. The defendant David J. Sheehan Company was organized in 1908, and took over the business of David J. Sheehan. Sheehan is and always has been the president, treasurer and general manager. It is a family corporation, the stock in which is owned almost entirely by David J. and his wife. Between 1908 and 1912 inclusive, under a municipal license the barn was from time to time enlarged until in 1912 it and the extensions made a barn one hundred and seventy feet long by thirty-two feet wide. Within the same period under municipal licenses, the number of horses kept on the premises increased from three to about sixty. The master reports at great length the conditions under which the business of the defendants was carried on before the stable was burned on December 27, 1915. These conditions manifestly were calculated to cause a material and substantial disturbance and annoyance to the plaintiffs as owners and occupiers of the adjoining lands, and fully warranted the master in his conclusion of fact "that for some time before the Sheehan stable was burned it had been a source of annoyance and discomfort to the O'Keefes living next door and to the O'Keefes living at 414 Broadway by reason of offensive odors and the pounding of horses and the presence in unusually large quantities of flies attracted by or bred in the exposed manure stored under the stable." The defendants properly concede that the conditions of the use of the premises and the actual discomforts and annoyances to the plaintiffs in the use of their property, which naturally flowed therefrom, constituted a private nuisance at common law as well as a violation of the restrictions of their deed, but contend that the business as it was carried on was not a legal nuisance because of the licenses to use the barn as a stable. *Murtha* v. *Lovewell,* 166 Mass. 391. *Sawyer* v. *Davis,* 136 Mass. 239. *Levin* v. *Goodwin,* 191 Mass. 341. Of course this is true if the business or trade licensed cannot be carried on without interfering with the comfort of adjoining owners or neighborhood in the way complained of; but is without force and untrue if the conditions which would amount to a common law nuisance are not attributes of the business, but are the result of

its negligent management or, as in the case at bar, are the natural consequences of avoidable unsanitary and illegal conditions.

The defendants further contend that the restrictions contained in the several deeds are without effect because the negative easement therein attempted to be created, and attached to all the parcels of land, is a "reservation of no greater right than the law imposes upon every such parcel of real estate in favor of an abutting owner or the neighborhood." We cannot agree with this argument: there is nothing in the policy of the law which is hostile to the protection of property and property rights, through a covenant or contract which is supplementary and in addition to that protection which the law affords as of right; nor do we think a municipal license to do acts, which without it would create a common law nuisance, nullifies an existing agreement which runs with land not to do acts nor to create conditions which are illegal at common law, in the absence of a legislative or municipal license.

· The barn was almost totally destroyed by fire on December 27, 1915. On December 28, 1915, the plaintiffs notified the defendants ". . . that it is the intention . . . if ·an attempt be made to resume said business on said premises or to use said premises in any other manner that would be 'in the nature of a nuisance to the abutting owner and the neighborhood,' to seek a restraining order from the court." On January 31, 1916, the defendants wrote the plaintiffs as follows: ". . . You are further notified that I intend forthwith to rebuild the stable which was recently destroyed by fire on my said premises, and to use the reconstructed stable for the stabling of horses in the same manner and to the same extent as the business of the David J. Sheehan Company was carried on before said fire." On February 2, 1916, a municipal license issued to the defendants to build and use a stable for fifty horses upon the premises at 424 Broadway (lot C). On February 14, 1916, immediately after the defendants began the erection of the new stable, this bill was filed. The new stable had been completed and was occupied March 25, 1916. The hearings before the master began on March 27, and ended on June 13, 1916. It is not contended that there has been a violation by the defendants of the terms of their license. Upon the question whether the use of the stable was "in the nature of a nuisance" after it was rebuilt and possession taken on March 25, 1916, the

master found the evidence "not very complete nor very satisfactory," and further found that "it could hardly be otherwise." He noted many improved conditions but found that "only experience will tell whether these improvements will effectually remove the objectionable features of the old stable or not." He further stated: "It may well be that notwithstanding all the precautions prescribed in the license, the new stable will prove a substantial annoyance to the occupants of the adjoining premises. I cannot see, however, how any one can tell how this will be until a fair trial of the new arrangements is given." We are of opinion the plaintiffs are not prevented from maintaining this suit by their laches, their waiver or acquiescence, but we are constrained to the opinion that the negative findings of the master which resulted from his inability to determine upon the evidence whether the use of the premises within the short interval of time that had elapsed between the occupation of the new stable and the hearing was a nuisance or a use in the nature of a nuisance make it imperative, in the opinion of a majority of the court, that an injunction should not now issue and require that the bill should be dismissed without prejudice and without costs.

An ordinance of the city of Lynn passed on May 23, 1911, provided that "No tenement or dwelling house or other building outside fire limits and more than ten feet in height shall be erected, altered or located on a lot so that any part of same including cornice, bay window, porch or other projection shall be within three feet of said lot lines or any adjoining lot lines. . . ." It was found by the master that the stable was outside the fire limits, was more than ten feet in height, and was within three feet of the plaintiffs' lot line. It was rebuilt and altered, and was not repaired as the defendants contend. It therefore was a statutory nuisance to the extent it was rebuilt, erected and altered in violation of the ordinance. *Worcester Board of Health* v. *Tupper,* 210 Mass. 378.

The defendants contend that the plaintiffs have no "standing to enforce this municipal police regulation." The question whether the remedy by fine or in equity is a purely public remedy is settled in this Commonwealth by *Hagerty* v. *McGovern,* 187 Mass. 479, wherein, in a suit in equity to restrain the owner of land from building a house within three feet of the boundary line of his lot in

violation of a city ordinance, it was said by Barker, J., at page 480: "The erection upon it of structures which in themselves are not noxious or unusually dangerous is not a use in violation of the private rights of an adjoining owner, even if in some degree the enjoyment of the adjacent land is made less complete or beneficial than if the land were bare. The breach of the ordinance by the defendant is not an invasion of the plaintiff's private right. All the injurious results of the erection of the defendant's building come not from his violation of the ordinance, but from the use of his land for building. The plaintiff shows no peculiar damage due to the breach of the ordinance, and no right to have private relief because of its violation. See *Jenks* v. *Williams,* 115 Mass. 217." *Rudnick* v. *Murphy,* 213 Mass. 470, 471. The fact that the business carried on upon the premises in *Wright* v. *Lyons,* 224 Mass. 167, was a common law nuisance unless legalized by a municipal license, distinguishes that case from *Hagerty* v. *Mc-Govern, supra,* and the case at bar where the nuisance, if any there was, is predicated solely upon a violation of a municipal ordinance. *Dahlin* v. *Walsh,* 192 Mass. 163. *Field* v. *Gowdy,* 199 Mass. 569, 573.

It follows that the bill upon both issues must be dismissed, without costs and without prejudice.

*Decree accordingly.*