JANE W. W. BANCROFT & others *vs.* BUILDING COMMISSIONER OF THE CITY OF BOSTON.

Suffolk. March 17, 24, 1926. — September 17, 1926.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Mandamus. Practice, Civil, Parties. Boston,* Building laws. *Statute,* Construction.

Upon the building commissioner of the city of Boston stating, against the protest of owners of lots of land on the north side of Beacon Street in Boston, some adjacent to a lot upon which it was proposed to erect a building in violation of the building laws of the city, that he intended to grant a permit for the erection of the building, and the corporation counsel refusing to institute proceedings under St. 1907, c. 550, § 129, such owners have a right to maintain a petition for a writ of mandamus to compel the building commissioner to perform his public duty of refusing to grant the permit.

An apartment house at least eighty feet in height, to be adapted for occupation as a dwelling for more than three families living independently of one another and doing their own cooking upon the premises, and for more than two families above the first story so living and cooking, is a "tenement house" within the meaning of St. 1907, c. 550, §§ 42, 55,

Where a statute in explicit language defines a word, it is immaterial what definition may have been given to the word by lexicographers or what meaning is commonly ascribed to it.

The establishment under St. 1893, c. 462, of building lines on lots on the north side of Beacon Street in Boston did not make a parcel of land thereon, which was one hundred and fifty feet deep from Beacon Street to Back Street, less than a "lot" one hundred and fifty feet in depth within the provision of St. 1907, c. 550, §§ 42, 55, the building line merely imposing an easement for the public use and not reducing the size of the parcel.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on December 22, 1925, described in the opinion.

By successive orders, The Embassy, Inc., and Louis K. Rourke, successor as building commissioner of Boston, were permitted to intervene as parties respondent, and Davenport Brown and William W. Vaughan as parties petitioners.

The facts were agreed upon. Material facts are stated in the opinion.

The case was reserved by *Crosby*, J., upon the terms stated in the opinion.

*A. D. Hill*, (*R. S. Sughrue* with him,) for the petitioners.

*L. Schwartz*, Assistant Corporation Counsel, for the respondent Building Commissioner of Boston.

*D. J. Lyne*, (*J. W. Mahoney* with him,) for The Embassy, Inc., intervenor.

CROSBY, J. This is a petition for a writ of mandamus by residents of Boston. The case is before us on a reservation by a single justice of this court upon the pleadings and an agreed statement of facts, with the following recital: "If the petition is maintainable as matter of law, I should not dismiss it in the exercise of any discretion which may be. vested in me."

The Embassy, Inc., owns a parcel of land on the northerly side of Beacon Street in Boston, and on or about December 9, 1925, made application to the building commissioner for a permit to erect an apartment house on the land, which has a depth of one hundred and fifty feet to Back Street, a street, alley or open passageway running parallel with and north of Beacon Street. The petitioners are severally the owners of lots situate on the northerly side of Beacon Street, each with.

a single dwelling house thereon; and two other petitioners who have been allowed to intervene are owners of lots each with a dwelling house thereon adjacent to the lot on Beacon Street owned by' The Embassy, Inc. The building commissioner and his predecessor in office have respectively informed the petitioners that the permit will be granted as applied for unless its issuance is prevented "by legal order." It is the intention of the present building commissioner, the respondent Rourke, to grant such permit unless so prevented. The petitioners contend that the building proposed to be erected as described in the agreed statement of facts would be in violation of the building law of the city of Boston. (St. 1907, c. 550, § 55.) The petitioners pray that a writ of mandamus issue commanding the respondent building commissioner to refuse to grant the permit applied for.

On this record two main questions are presented: (1) Are the petitioners entitled to maintain this petition to prevent the erection of the building in violation of the building law of the city of Boston? and (2) Would the proposed building if erected be in violation of § 55 of the building law which requires a central yard space across the width of the lot?

The general rule is that, to maintain a petition for mandamus, the petitioner must show some private right or interest beyond the right and interest of the public. But when the question is one of public right and the purpose is to procure the performance of a public duty, and no other remedy is open, a petitioner need not show that he has any special interest in the result: it is sufficient that as a citizen he is interested in the due execution of the laws. *Union Pacific Railroad* v. *Hall,* 91 U. S. 343. *Strong, petitioner,* 20 Pick. 484, 495. It was said by Chief Justice Gray in *Attorney General* v. *Boston,* 123 Mass. 460, at page 479: "There is a great weight of American authority in favor of the doctrine that any private person may move, without the intervention of the Attorney General, for a writ of mandamus to enforce a public duty not due to the government as such." In *Cox* v. *Segee,* 206 Mass. 380, it was held that two citizens and taxpayers of a town might maintain a petition for mandamus to compel the assessors of taxes of a town to comply with a

valid by-law of the town, even though the selectmen had refused to act, and the Attorney General declined to interfere.    In that case it was said (page 381): "But if in the performance of their official duties the respondents were subject to the by-law, the petitioners, as inhabitants and taxpayers of the town, may compel its enforcement by mandamus, even if upon their request the selectmen refused to act and the Attorney General after hearing the relators declined to intervene."    This rule was applied in *Brewster* v. *Sherman*, 195 Mass. 222.    In *Kelley* v. *Board of Health of Peabody*, 248 Mass. 165, it was held that the taxpayers of a city could not maintain a bill in equity to restrain the board of health and plumbing inspector from permitting a violation of a municipal ordinance or by-law.    But it was there said (page 169): "The case presented is one where the owner of the building and the contractor are about to violate the ordinance, while the board of health and the inspector of plumbing stand by inactive, giving countenance to the intended unlawful act.    In this attitude of the board of health and the inspector of plumbing, any citizen may prefer a complaint to the mayor, as the chief executive officer of the city; and upon the failure of such officer to act in the name of the city, may himself proceed by petition for a writ of mandamus, or for a mandamus by the information of the Attorney General."    See *O'Brien* v. *Turner*, 255 Mass. 84. This is in accordance with the rule in England.    *Rex* v. *Severn & Wye Railway*, 2 B. & Ald. 646.    *Rex* v. *Justices of Kent*, 14 East, 395.    The decisions above cited show that a writ of mandamus is the proper remedy in a case of this kind.

The cases relied on by the respondent are not in conflict with the result here reached.    *Pearsons* v. *Ranlett*, 110 Mass. 118, was a petition for a writ of mandamus, and it was held that the writ should issue.    In *Jenks* v. *Williams*, 115 Mass. 217, *Hagerty* v. *McGovern*, 187 Mass. 479, and *O'Keefe* v. *Sheehan*, 235 Mass. 390, the relief sought was by bill in equity.    *Rudnick* v. *Murphy*, 213 Mass. 470, was a petition for certiorari.    *Warner* v. *Taunton*, 253 Mass. 116, was a petition for a writ of mandamus.    The alleged obstructions in the highway, if unlawful, constituted a public nuisance

for which an adequate remedy was given by prosecution, and in equity by an information by the Attorney General or some other public officer representing the Commonwealth. For these reasons that case is distinguishable from the facts in the case at bar. Mandamus will not lie when there is any other adequate remedy. *Daly* v. *Mayor of Medford,* 241 Mass. 336, 339. Apart from other causes, the remedy invoked for relief in the cases last cited and relied on by the respondent distinguishes them from the case at bar. It is plain that the petitioners are not entitled to relief in equity (*Kelley* v. *Board of Health of Peabody, supra,* and cases therein cited) and that mandamus is the only remedy open to them. *Jenks* v. *Williams, supra. Attorney General* v. *Boston, supra. Brewster* v. *Sherman, supra. O'Brien* v. *Turner, supra.*

The fact that the building commissioner has not acted upon the application is not a bar to the maintenance to the present proceeding. When "the person or corporation against whom the writ is demanded has clearly manifested a determination to disobey the laws, the court is not obliged to wait until the evil is done before issuing the writ." *Attorney General* v. *Boston, supra,* at page 474. *Larcom* v. *Olin,* 160 Mass. 102, 110. *Brewster* v. *Sherman, supra. Cunningham* v. *Mayor of Cambridge,* 222 Mass. 574, 580. It follows that the petition was not prematurely brought.

It is provided by the building law of the city of Boston, St. 1907, c. 550, § 129, that "Any court having jurisdiction in equity or any justice thereof shall, upon the application of the city by its attorney, have jurisdiction in equity; . . . To compel compliance with the provisions of this act." No remedy is given the petitioners by this statute, the authority to act being vested exclusively in the attorney for the city to enforce the provisions of the law. The record shows that before filing this petition the petitioners applied not only to the building commissioner, but to the corporation counsel of the city to take proper action to prevent a violation of the building laws, but each declined to act, and the commissioner stated that he intended to grant the permit as applied for. In these circumstances the petitioners are entitled to apply

for a writ of mandamus.    *Attorney General* v. *Boston, supra.*
*Cox* v. *Segee, supra.    Kelley* v. *Board of Health of Peabody,*
*supra.*    It is plain that the statutory remedy provided by
§ 129 affords no relief to the petitioners as counsel for the
city upon application to him has refused to act.

The question remains, Would the building proposed to be
erected as described in the agreed statement of facts be a
violation of St. 1907, c. 550, § 55, which requires a central
yard space across the width of the lot?    So far as pertinent
to the issue involved, § 55 reads as follows: "Whenever a
tenement house is hereafter erected upon a lot which runs
through from street to street, or from a street to an alley or
open passageway, and said lot is one hundred and fifty feet
or more in depth, said yard space shall be left midway be-
tween the two streets, and shall extend across the entire width
of the lot, and shall be not less than twenty-four feet in
depth from wall to wall, and shall be increased in depth at
least two feet for every additional ten feet in height of the
building, or fraction thereof, above fifty feet."

It is manifest that the provisions of § 55 would be violated
if that section is applicable to the proposed building.    The
application and plans provide for the erection of an apart-
ment house at least eighty feet in height, to be adapted for
occupation as a dwelling for more than three families living
independently of one another and doing their own cooking
upon the premises, and for more than two families above the
first story so living and cooking; there is no yard space as
described in § 55, although a somewhat different yard space
is provided for.    The agreed statement of facts shows that
the lot of The Embassy, Inc., extends from the north line of
Beacon Street to the south line of Back Street, and is one
hundred and fifty feet in depth.    It is also agreed that on
or about January 5, 1895, by two orders the street commis-
sioners of .Boston under authority of St. 1893, c. 462, es-
tablished a building line on the north side of Beacon Street
running parallel to the street at a distance of twenty feet
northerly therefrom.

It is the contention of the respondent that the proposed
building is an apartment house, and is not a "tenement

house" within the meaning of § 55. St. 1907, c. 550, § 42, defines a tenement house as follows: "A tenement house is any house, building, structure or portion thereof, occupied, or adapted for occupation, as a dwelling by more than three families living independently of one another and doing their own cooking upon the premises, or by more than two families above the first story so living and cooking. A family living in a tenement house may consist of one or more persons." As the statute in explicit language defines a "tenement house" as used in the building law, it is immaterial what definition may have been given to the term by lexicographers, or what meaning is commonly ascribed to it. We are of opinion that the statutory definition of a tenement house is sufficiently comprehensive to include an apartment house.

In the previous building law of the city, St. 1897, c. 413, § 1, amending St. 1892, c. 419, § 17, a tenement house was defined substantially as in St. 1907, c. 550, § 42, with the addition of the following clause: "and includes apartment houses, family hotels, and flat-houses, where families are so living and cooking." It is argued by the respondent that the omission of this clause in the later statute shows that the Legislature did not intend to include apartment houses within its terms. If apartment houses are not within the definition of tenement houses as described in the statute of 1907 then family hotels and flat houses are not within it. We cannot believe that it was intended to exclude these three classes of buildings from the operation of the later statute, but that the clause in the former statute was omitted because deemed superfluous, and also in order to have a definition broad enough to include all buildings occupied or intended to be occupied as described in the act. The case of *Grimmer* v. *Tenement House Department of New York*, 204 N. Y. 370, is not an authority in favor of the defendant's contention. That case involved the construction of two New York statutes, one dealing with tenement houses and the other with apartment houses. It was held that the tenement house act did not apply to an apartment house. The building law relating to the city of Boston is embodied in a single act and describes a tenement house in terms sufficiently broad to include an apartment house.

Although the lot extends through from Beacon Street to Back Street, and is one hundred fifty feet in depth, it is the contention of the respondent that § 55 does not apply, and that the word "lot" as used in the statute means a lot or plot of land all of which may be used for building purposes, and that so construed the depth of the lot in question by reason of the establishment of the building line has been reduced in depth to one hundred and thirty feet. St. 1893, c. 462, after granting the necessary authority to establish building lines, provides that "until another building line shall thereafter be established in the same manner, no structure shall thereafter be erected, placed or maintained between such building line and such way, except that steps, windows, porticos and other usual projections appurtenant to the front wall of a building, may be allowed in such restricted space, to the extent prescribed in the vote establishing such building line." The establishment of the building line did not reduce the area or size of the respondent's lot, it did not involve the physical taking of any portion of the lot, but it established a line beyond which the owner was not permitted to build upon, and merely imposed upon the land beyond the line an easement for the public use. *Curtis* v. *Boston,* 247 Mass. 417, 426. *Watertown* v. *Dana,* 255 Mass. 67. Since the establishment of the building line the abutting owner not only owns as much land as he did before, but he can make any lawful use of it he could before, except that he cannot use it in violation of the order establishing the line. It is to be assumed that when § 55 was enacted and made applicable to lots one hundred and fifty feet or more in depth, the members of the Legislature were aware that lots on some streets were subject to a building line, and intended that on such lots tenement houses should not be built except under the provisions of § 55.

It is manifest for the reasons stated that the erection of the proposed building would be a violation of the statute.

It follows that the demurrers should be overruled, the motion to dismiss denied, and a peremptory writ of mandamus is to issue.

*So ordered.*