## Clarey, Appellant, v. Philadelphia, et al.

Argued January 9, 1933. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Robert T. McCracken,* with him *Ulric J. Mengert* and *Samuel A. Goldberg,* for appellant.—The property in

question is dedicated to public use for well defined public purposes: Trustees of Phila. Museums v. University of Penna., 251 Pa. 115.

The use of the Convention Hall as a sports arena is ultra vires: Bloomsburg Imp. Co. v. Bloomsburg, 215 Pa. 452; Lesly v. Kite, 192 Pa. 268; Sherlock v. Winnetka Village, 68 Ill. 530; State v. Hiawatha City, 127 Kan. 183.

*Thomas B. K. Ringe,* with him *James Hall Prothero* and *Ernest Lowengrund,* Assistant City Solicitors, and *David J. Smyth,* City Solicitor, for appellees, cited: Com. v. Boro., 201 Pa. 154; Laird v. Pbgh., 205 Pa. 1; Biltz v. Boro., 3 Pa. C. C. R. 412; Bailey v. Phila., 184 Pa. 594; Phila. v. Brabender, 201 Pa. 574; Com. v. Walton, 182 Pa. 373; Wentz v. Phila., 301 Pa. 261; and other cases.

OPINION BY MR. JUSTICE DREW, March 20, 1933:

The City of Philadelphia, under an ordinance approved July 5, 1928, erected a convention hall on certain property owned by it, known as the "Museum Grounds." A taxpayer, John A. Clarey, filed this bill in equity against the city, and its officers and agents charged with the management of the hall, to restrain them from permitting its use for the exhibition of boxing, wrestling, or other sporting events conducted for private gain or profit. Preliminary objections were sustained, whereupon complainant filed an amended bill. To the bill as amended, defendants also filed preliminary objections, which were likewise sustained, with leave to amend within thirty days. No further amendments having been made, a decree was entered dismissing the bill, and complainant appealed.

The amended bill of complaint avers that the ground upon which the convention hall was erected is a part of the grounds known as the "Commercial Museum Grounds" in West Philadelphia; that the city, by ordinance approved July 6, 1883, formally set aside these

grounds, "for the purpose of being improved for the health and public welfare of the citizens of Philadelphia"; that subsequently, by ordinances of June 27, 1895, and October 10, 1896, it was provided that this land "be forthwith opened to use as a public park forever," and that "the said grounds and the said museum building thereon to be erected shall be forever open to the free access of the public at all times"; that pursuant to these ordinances large sums of public money were expended for the laying out, grading and improving of the ground and in constructing and equipping buildings thereon, which were used by the public; that the city thereby created a public trust, perpetual and irrevocable, and by the aforementioned ordinances dedicated this land for public purposes, and is now without authority or power to revoke that trust and dedication; that the defendants have in the past, and intend in the future, to license, lease, or permit the use of the convention hall by promoters of professional boxing, wrestling, and other sporting events, to which spectators are charged admission; that the promotion of such sporting events and the leasing of buildings for such use is not a function of the city, but is a private business, commonly carried on for private gain or profit; and that such use of the convention hall by the city is ultra vires. The prayer of the bill asks that an injunction be issued restraining the defendants from permitting the use of the hall for such events conducted for private gain. The learned court below sustained the preliminary objections to the amended bill on the ground that the occasional renting of the convention hall to persons who made a private profit out of its use was not objectionable.

Complainant concedes that the erection of the hall was a proper use of the grounds in question, consonant with the purposes for which they were dedicated. His only objection is to the leasing of the hall for professional sporting events. He contends that the city may

not permit such use of this building, erected upon property dedicated to the use of the public.

Unquestionably this hall, built with public funds upon property dedicated to public purposes, must be held to be devoted to public use. But there can be no sound reason why, when the hall is not required for public purposes, the city may not permit its use by private persons. From its very nature as a building designed to accommodate large groups of people, the hall cannot possibly be in demand for public gatherings for more than a small portion of the time, and necessarily must frequently be idle, yet with little diminution in the cost of maintenance. There can be no ojection to the city's receiving a return from the use of the hall by private persons upon occasions when it would otherwise be idle. To say, under the facts of this case, that the city is engaging in private business—that of promoting sporting events or leasing buildings—is absurd. Complainant's contention is, in effect, that the hall must stand unused at all times when it is not in demand for strictly public use. Although he objects only to the use of the hall for professional sporting events, if his objection is sustained for the reasons he gives, or any reasons, the effect is to confine the use of the hall to purely public functions and thereby exclude its use for all private affairs, with the result that the city will be barred from receiving any revenue for its maintenance, and the entire cost thereof will have to be borne by the taxpayers. Such argument must be rejected. It is not sound in law or business practice. It would be folly to require this large and expensive public structure to be kept idle when it is not needed for public use, and when it might be used by private persons for a proper rental, to the mutual advantage of the taxpayers of the city and those permitted to use it.

So far as we know, the precise question here presented has never been determined by the courts of this State, but there is language in Lowry v. Forest City, 39 Pa.

Superior Ct. 276, which supports the views here expressed. It was there held that a taxpayer could not enjoin a borough from making expenditures for the preparation of new quarters at the rear of its municipal building for its volunteer fire company and for the alteration of the old quarters at the front of the building for rental to private persons. The learned chancellor, upon whose opinion the decree was affirmed, quoted with approval the following language from French v. Inhabitants of Quincy, 3 Allen (Mass.) 9 : "The court are of the opinion that a town having in its town house rooms which it had authority to construct as part of such building, and not having occasion to use them for the time being, is not obliged to keep them unoccupied, but may derive a revenue from them by renting them, or may allow them to be used gratuitously; such a use of the property is within its legal authority."

The rule in other jurisdictions is that a municipality may lease a public building, or a part thereof, to be used for private purposes, provided that such private use does not interfere with the use of the building for the public purposes to which it is devoted. It is stated in Dillon, Municipal Corporations (5th ed.), section 997, that "A city cannot, as landlord or lessor, make a lease of real estate owned by it which is held for public purposes, when the making of such lease is inconsistent with these purposes. ...... [But] although [a] building may be held for public use, the municipality may allow the entire building, or a part thereof, to be used incidentally for private purposes for compensation, and may make leases of surplus space for the purpose of deriving an income therefrom, provided, always, such private use or such leases do not interfere with the application of the building to the legitimate public needs of the municipality." See Kneier, "Municipal Functions and the Law of Public Purpose," 76 U. of Pa. L. Rev. 824, 833; McQuillin, Municipal Corporations (2d ed.), section 1247; 44 C. J. 1092; 63 A. L. R. 614, 617.

The Maggie P., 25 Fed. 202, was a case involving this general principle. There it was held that a contract by a city to raise with its harbor boat the hull of a sunken river vessel was not ultra vires, as an engaging by the city in private business. Judge BREWER, who later became a member of the Supreme Court of the United States, said: "When [a city] has in its possession instrumentalities, and hires employees for the purpose of discharging some public duty, I see no reason why, when the exigencies of public duties do not require the use of those instrumentalities and employees, it may not make a valid contract to use them in some private service."

In Worden v. City of New Bedford, 131 Mass. 23, it was held that a city might properly lease its town hall for profit for lectures, exhibitions, amusements, and other like purposes, as, in this instance, a poultry show. The court said: "The city could not erect buildings for business or speculative purposes, but having a city hall, built in good faith and used for municipal purposes, it has the right to allow it to be used incidentally for other purposes, either gratuitously or for a compensation." In Stone v. City of Oconomowoc, 71 Wis. 155, the plaintiff, a taxpayer, who was the owner of a hall fitted for use for concerts, dances, and other public amusements and gatherings, sued to enjoin the city from leasing the auditorium of its newly built city hall for profit for plays, lectures, concerts, and dances, on the ground that this was a commercial use of public property in competition with private business, particularly that of the plaintiff. An injunction was denied. Likewise, in Bell v. City of Platteville, 71 Wis. 139, it was held proper for a city to lease the auditorium in its city hall for theatrical uses and other entertainments. So, also, in Jones v. Inhabitants of Sanford, 66 Me. 585, it was held that it was not improper for a town to allow a dramatic company the use of its town house, when not wanted for town purposes, in consideration of the company's enlarging and repairing the building. See Gottlieb-Knabe

Co. v. Macklin, 109 Md. 429; Davis v. Inhabitants of Rockport, 213 Mass. 279, 283; Anderson v. City of Montevideo, 137 Minn. 179; Meredith v. Fullerton, 83 N. H. 124; City of Mission v. Richards, 274 S. W. (Tex. Civ. App.) 269.

We have not been able to find an authority to support the contention of complainant. Indeed, it seems that ordinary prudent management would require that the city rent this property, and derive some income from it, when it is not needed for public use. Similar considerations governed the Supreme Court of Vermont in holding, in Bates v. Bassett, 60 Vt. 530, that it was proper to use municipal funds to repair an old town hall, no longer needed for municipal purposes, so that it might be rented to private persons. See also French v. Inhabitants of Quincy, supra.

From what we have said, it is evident that the City of Philadelphia is within its legal authority in renting its convention hall for private use when it is not required for public gatherings. Of course, this power must not be exercised so as to prevent or interfere with the use of the hall for the public purposes to which it was dedicated, which must always be given precedence. But complainant does not aver that any private use of the convention hall has at any time in the past, or will at any time in the future, prevent or interfere with its use for public purposes. This, we think, was a vital part of his case. Since the bill was thus lacking in an essential feature, the court below acted properly in dismissing it.

The decree of the court below is affirmed at the cost of appellant.