FRANK CLAPP & *a.* v. JAFFREY & *a.*

*Francis H. Ayer* and *Arthur Olson* (*Mr. Ayer* orally), for the plaintiffs.

*Walter H. Gentsch* and *Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the defendants.

BLANDIN, J. The first question transferred to us is whether it is lawful for the town to rent equipment to or perform services for private individuals on their property. Assuming that such actions are subordinate and incidental to town needs, and that the prices charged are sufficient to cover the cost so that no burden falls on taxpayers, we believe such actions are lawful. In the case of *Curtis* v. *Portsmouth,* 67 N. H. 506, one question raised was whether the city could sublet part of a building, leased by it for authorized uses, to an unincorporated veterans association. The court held that since occupation by the veterans post was "incidental and subordinate" to the lawful general purposes, the action of the city was not *ultra vires.* The opinion went on to say that "The case is similar to that of a municipality's leasing parts of a town or city hall, not needed for municipal purposes, for stores or offices." *Pp.* 508-509. This decision was approved in *Meredith* v. *Fullerton,* 83 N. H. 124, and although the lease there was voided for other reasons, it is significant that the court found no fault with the fact that janitor services as well as heat and light were to be furnished by the town to the lessee. In *Douglas* v. *Hollis,* 86 N. H. 578, 580, the opinion states that the right of a town "to lease parts of a public building not needed for municipal services is unquestioned." None of these cases have been overruled or criticized in this jurisdiction, and there is good authority to analogous effect elsewhere. *The Maggie P.,* 25 Fed. 202, 204. There appears no sound distinction between leasing real estate with an agreement to furnish such services as heat, light, and a janitor and leasing personalty or performing such actions as plowing or tarring a driveway.

While neither expediency nor custom should be allowed to override principle, it is common knowledge and a fact entitled to weight (76 Univ. Pa. L. Rev. 824, 825) that town help and equipment which would otherwise lie idle have been used to plow private ways for many years. This has been both a source of income to the towns and a convenience to individuals who otherwise might experience

great difficulty in obtaining this necessary service. The fact that some of the acts questioned here, such as plowing driveways, are done on private property does not alter the situation. No authority that it does has been furnished us, nor has counsel for the town suggested any persuasive reason for making such a distinction. It is well known that long before the passage of Laws 1949, c. 133, relative to public dumps and the removal of waste and garbage, towns had collected rubbish and garbage generally at the back door at homes, hotels and restaurants. The pumping of water out of private cellars by fire departments or other municipal departments possessing the necessary equipment has long been practiced. Not only do great numbers of people now accept and even demand such services as are involved here, but their performance has been an increasingly important factor in local government. See Hillhouse, Where Cities Get Their Money; Pelletier, Financing Local Government, Municipal Research Series No. 12, 1948. Indeed, it seems that ordinary prudent management dictates that the town derive some income and the public some benefit from this property when not needed for town uses rather than permit it to lie idle. *Clarey* v. *Philadelphia*, 311 Pa. 11, 16; *Bates* v. *Bassett*, 60 Vt. 530; *Davis* v. *Rockport*, 213 Mass. 279.

The reasoning in *Opinion of the Justices*, 313 Mass. 779, furnishes no support for the proposition that plowing, tarring, or sanding private driveways is necessarily *ultra vires*. The court held there that plowing private ways open to the public was a legitimate service for a municipality to perform. It also affirmed the ancient rule that tax monies cannot be used for the advantage of private individuals. The defendant town in the case before us in its brief expressly concedes that such is the rule in our state (*Stocklan* v. *Brackett*, 95 N. H. 227, and cases cited), and also admits it has no power to perform the services concerned here as a primary undertaking. *Opinion of the Justices*, 94 N. H. 515, and authorities cited. However, the distinction between the situation in *Opinion of the Justices*, 313 Mass. 779, and the one before us is plain. In the Massachusetts case the persons to whom service was rendered paid nothing for it and the burden therefore fell on the taxpayers. Obviously, the language of the opinion must be construed with this fact in mind. Our conclusion is that if the individuals served pay a sufficient fee so that no tax monies are being expended, and if the acts are subordinate and incidental to the town needs, the town may perform any or all of the services in question. Under the same assumption

the town may rent its equipment to private individuals. In so deciding we wish to make it crystal clear that "subordinate and incidental" are vital and restrictive words. Their meaning is not to be expanded to permit the town to make purchases or hire help beyond its own reasonable public needs in order to use them for the benefit of private persons. Neither can the town perform services for or make rentals to individuals to an extent which under all the circumstances may be deemed proportionately substantial. In such an event it might fairly be said that the acts were no longer subordinate and incidental but would become primary undertakings and therefore *ultra vires* as the defendant expressly concedes in his brief. Their illegality would be equally clear if the charge were insufficient to relieve taxpayers of all burdens.

We also are asked to decide whether the plaintiffs are entitled to injunctive relief in their capacity as owners of equipment, citizens, residents, voters or taxpayers of Jaffrey. We have been furnished with no authority nor do we find any to indicate that a voter or a citizen in whichever of its various senses the latter word is used (see 14 C. J. S., Citizen, *ss.* 1, 2), has any greater rights here than a taxpayer. McQuillin, Municipal Corp. (3d *ed.*) s. 52.12. The same is true of a resident. Again we have a word of so many possible connotations that its meaning has been described as "flexible, elastic, slippery, and somewhat ambiguous." 77 C. J. S., Resident, 305. The authorities fully bear out this interesting definition, if such it may be called. However, taking the word in its customary usage (R. L., *c.* 7, *s.* 2) as indicating some permanency of abode (*School District* v. *Pollard,* 55 N. H. 503, 504, 505), we perceive no reason to hold that a resident is in a better position to demand equitable relief here than a taxpayer. Indeed, there is authority that citizens, residents, and impliedly voters would be entitled to no relief here. *Loomis* v. *McCahey,* 297 Ill. App. 479. Since the record and the pleadings set up all the plaintiffs as taxpayers, it seems unnecessary to further consider their standing as citizens, voters, or residents. Nor do they have any right as owners of equipment to be free from competition under our laws. *Petition of Mt. Washington Road Co.,* 35 N. H. 134, 146. See also, *Eaton* v. *Railroad,* 51 N. H. 504, 527; *N. H. Board &c.* v. *Company,* 90 N. H. 368. However, we believe that in spite of authority to the contrary, our decisions and the better reasoning permit taxpayers to maintain an equitable action, assuming that the acts here are *ultra vires,* even though it

cannot be shown that they result in financial loss to the town. In *Sherburne* v. *Portsmouth*, 72 N. H. 539, the plaintiff taxpayers brought a bill in equity to restrain the defendant city from building a baseball park and fencing it on a public common. The court thus stated the issue before it in the opinion, "The question of law raised by the demurrer is the power of the court to restrain city councils at the suit of a taxpayer from acting illegally." *Id.*, 539, 540. It then went on to say, "it is not necessary, to entitle him [the taxpayer] to this relief, that he should suffer a loss in common to the public." *Id.*, 540. Later on in the same opinion, it was said, "city councils act in a trust capacity in administering the ordinary business affairs of the city . . . there is the same need of a remedy to prevent city councils from abusing their trust that there is to prevent other trustees from abusing theirs." *Id.*, 542. The rationale of this decision does not limit taxpayers' relief to mere pocketbook injuries, nor do we see any sound basis for so doing. More and more our law is moving from the narrow field of interests of this nature as a basis for equitable relief to the wide plain of less tangible but nonetheless real and important rights. See *Conway* v. *Water Resources Board*, 89 N. H. 346, 348. Assuredly, modern conditions demand that our law take cognizance of functions as well as tangible matters. With this in mind, it is plain that every taxpayer of a town has a vital interest in and a right to the preservation of an orderly and lawful government regardless of whether his purse is immediately touched. *Cf. Bancroft* v. *Building Commissioner*, 257 Mass. 82; *Sunderland* v. *Building Inspector of North Andover* (Mass.), 105 N. E. (2d) 471, 473. As town officers are in effect trustees of government for this purpose, no good reason appears in logic or justice why taxpayers should not be allowed to protect their rights by the most direct, simple and expeditious remedy, and not be forced to resort to ancient and rigidly limited procedures. *Blood* v. *Electric Co.*, 68 N. H. 340. In analogous situations, other courts and authorities have reached a like result. *Bernstein* v. *Pittsburgh*, 366 Pa. 200; *Harris* v. *Philadelphia*, 299 Pa. 473; *Haddock* v. *Board of Public Education in Wilmington*, (Del.) 84 A. (2d) 157. See also, McQuillin, Municipal Corp., (3d *ed.*) s. 52.36. We therefore hold that taxpayers are entitled to injunctive relief if the acts of the town are *ultra vires* even though they cannot show any financial loss to the town.

*Case discharged.*

462

KENISON, C. J., dissented: the others concurred.

KENISON, C. J., *dissenting*: The resurfacing of purely private driveways in the summer or the removal of snow in the winter from private driveways not open to the public is not a proper public function of towns and cities. See *Opinion of the Justices*, 313 Mass. 779. The fact that such actions are subordinate and incidental to town needs and that the prices charged are sufficient to cover the cost so that no ultimate burden falls on the taxpayers is not sufficient to convert an essentially private activity into a proper public purpose.