THOMAS F. HURLEY & others *vs.* CITY OF LYNN
(and two companion cases[1]).

Essex.    March 3, 1941. — May 27, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Municipal Corporations,* Fire department. *Equity Jurisdiction,* Petition by ten taxable inhabitants. *Mandamus. Certiorari.*

A petition by ten taxable inhabitants of a city under G. L. (Ter. Ed.) c. 40, § 53, was an adequate remedy to enjoin the expenditure of the city's money or its incurring of obligations pursuant to an order by the city council regulating the hours of duty of the members of the

---

[1] The companion cases are: Archibald T. Sampson & another *vs.* Mayor of Lynn & another; Same *vs.* Mayor of Lynn & others.

fire department in violation of c. 48, § 59; and a mandamus proceeding to prevent the carrying out of the order and a certiorari proceeding to quash the proceedings of the city council must be dismissed.

Section 59 of G. L. (Ter. Ed.) c. 48 requires that the two platoons of the permanent uniformed fire fighting force of a municipality alternate on and off duty as units; and an arrangement whereby the alternating was by individuals, with shifting of members from time to time from one platoon to the other and from one station or company to another, was in violation of the statute.

PETITION under G. L. (Ter. Ed.) c. 40, § 53; also petitions for writs of mandamus and certiorari, all filed in the Superior Court on March 22, 1940.

The cases were heard and reported by *Morton, J.*

*J. C. Reilly,* (*N. J. Murphy* with him,) for the respondents.

*E. S. Underwood,* for the petitioners.

Cox, J.    The city of Lynn at some time accepted § 59 of c. 48 of the General Laws, and thereafter the uniformed fire fighting force of said city was divided into two bodies or platoons.    There was evidence that these platoons were of equal numbers, one of which was on duty all the time, and that they alternated as units, except for the officers who alternated a day ahead of the men.    The arrangement under which the men worked was called the "84-hour plan."    In February, 1940, the city council adopted an order, the so called "72 Hour Plan," regulating the number and schedule of hours of duty of the members of the fire department, and, in compliance with this order, the city proposed to employ the members of the department and to pay them the same wages as they had theretofore received.

For the purpose of testing the legality of the proceedings, ten taxable inhabitants of the city of Lynn brought a petition in the Superior Court under the provisions of G. L. (Ter. Ed.) c. 40, § 53, in which they ask that the city, its officers and agents, be enjoined from proceeding under said order of the city council, and from expending any money or incurring any obligation in the pursuance or in the performance thereof.    At the same time, petitions for writs of mandamus and certiorari were filed by which it was sought to prevent the order from becoming effective or to quash the proceedings.

The cases were heard by a judge of the Superior Court who made findings of fact and ordered a final decree entered enjoining the city, its officers and agents from proceeding under said order, and from spending any money or incurring any obligation in pursuance or in performance thereof or in operating its fire department as provided for by said order. He reported the cases, with the evidence, to this court (G. L. [Ter. Ed.] c. 211, § 6; c. 214, § 31), stating that if either the petition for a writ of mandamus or that for certiorari is maintainable as matter of law, he would grant it in his discretion and order the appropriate writ to issue; that if the order for final decree was warranted, it should be entered; otherwise, such final decree was to be entered as justice and equity require. He further stated that the only issue raised and tried by the parties was whether the "72-hour plan," so called, adopted by the city council and put into effect by the fire chief was in violation of § 59 of said c. 48. This is the only issue that has been argued.

1. The parties have evinced little interest in the proper method of procedure and have addressed themselves principally to the issue tried. Prior to the passage of St. 1919, c. 132, cities and towns had broad powers relative to the establishment of fire departments. See R. L. c. 32, §§ 26–70, inclusive. By St. 1909, c. 514, § 44 (see now G. L. [Ter. Ed.] c. 48, § 56) cities and towns were authorized to establish the hours of labor of the members of the fire department. But St. 1919, c. 132, provided for important changes in cities and towns that accepted its provisions, as will more fully appear hereinafter. For the present, it is enough to say that it provided that the permanent members of the uniformed fire-fighting force "shall" be divided into two bodies or platoons, a day force and a night force, and fixed the hours of duty of both forces. Under the "84-hour plan," so called, the permanent membership consisting of a maximum of two hundred fifteen men, was divided into two platoons of equal numbers, but under the 72-hour plan the number of men in a platoon on service at one time was reduced, in effect, to a maximum number of seventy-six,

and under the latter plan, with the exception of the officers, the men were to alternate, not as units, but as individuals, and the judge found that this plan amounted to the creation of a third platoon consisting of the remainder of the force. The respondents concede that under the 72-hour plan a platoon is not on or off duty as a unit, but that its members are off duty one at a time. Admittedly the question presented is whether the 72-hour plan is in violation of the provisions of said § 59 of c. 48.

G. L. (Ter. Ed.) c. 40, § 53, provides that if a town or its officers or agents are about to raise or expend money or incur obligations purporting to bind the town for any purpose or object "or in any manner other than that for and in which such town has the legal and constitutional right and power to raise or expend money or incur obligations," the Supreme Judicial or Superior Court may, upon the petition of not less than ten taxable inhabitants of the town, determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise or abuse of such corporate power. We are of opinion that the remedy provided by said § 53 is applicable to the case at bar in that the expenditure of money for the maintenance of the fire department, in violation of said § 59 of c. 48, is an unlawful exercise of the city's corporate power, that this remedy is adequate and effective, and that the petitions for the writs of mandamus and certiorari do not lie. *Draper* v. *Mayor of Fall River*, 185 Mass. 142. *Finlay* v. *Boston*, 196 Mass. 267. *Welch* v. *Emerson*, 206 Mass. 129. *Flood* v. *Hodges*, 231 Mass. 252. *Adams* v. *Selectmen of Northbridge*, 253 Mass. 408. *Jones* v. *Natick*, 267 Mass. 567. *MacRae* v. *Selectmen of Concord*, 296 Mass. 394, 397. *Department of Public Utilities* v. *Trustees of New York, New Haven & Hartford Railroad*, 304 Mass. 664. *Amory* v. *Assessors of Boston*, 306 Mass. 354, 357, and cases cited. *Tranfaglia* v. *Building Commissioner of Winchester*, 306 Mass. 495. *Dube* v. *Mayor of Fall River*, 308 Mass. 12, 13–14, and cases cited.

2. We are of opinion that the order adopting the 72-hour plan is in violation of said § 59 of c. 48. St. 1919, c. 132,

approved April 25, 1919, provided in § 1 that the permanent members of the uniformed fire-fighting force in every city and town that accepted the provisions of the act "shall" be divided by the fire commissioner or other officer or officers having charge of the fire-fighting force into two bodies or platoons, which shall be designated as a day force and a night force, "and the day force and night force shall alternate on tours of duty every third day." Section 2 provided that the hours of duty of the day force shall be "from eight o'clock ante meridian to six o'clock post meridian, and the hours of duty of the night force shall be from six o'clock post meridian to eight o'clock ante meridian: provided, that on every third day, for the purpose of alternating the day force with the night force and vice versa, the number of hours of duty herein stated may be exceeded, but one force shall be at liberty at all times except as is otherwise provided in section three of this act." Section 3 provided that in case of a conflagration, all of the members of the fire-fighting force could be summoned and kept on duty while the conflagration continued. It was also provided that the act should not repeal or affect any act, ordinance or by-law relative to salary, pensions, annual vacations, sick or disability leave of absence of the members of the force, and that the provisions of St. 1909, c. 514, § 44 (see now G. L. [Ter. Ed.] c. 48, § 56), authorizing cities and towns to establish the hours of labor of firemen, St. 1912, c. 546, and St. 1915, c. 97, both of which provided one day off in five for firemen, should not thereafter apply to the permanent members of the uniformed fire-fighting force in any city or town that accepted the provisions of the act. All ordinances or by-laws, or parts thereof, affecting the number that might be appointed as members of its fire-fighting force, or the meal hours or days off of the members of the fire department of any city or town that accepted the provisions of the act were expressly repealed. This statute now appears in G. L. (Ter. Ed.) c. 48, § 59, and, as has been said, the city accepted its provisions, or corresponding provisions of earlier laws.

When the General Laws of the Commonwealth were enacted on December 22, 1920, to take effect on January 1,

1921, the phraseology of said c. 132 was somewhat changed. Obviously, this was necessary in order to make intelligible the earlier references to the statutes relative to hours of labor and days off. The only material change, so far as the case at bar is concerned, was in § 1, where, after providing for the division of the permanent members into two bodies or platoons, "which shall be designated as a day force and a night force," the words, "and the day force and night force shall alternate on tours of duty every third day," were changed so as to read, "and shall alternate on tours of duty every third day." The words of § 2 of said c. 132, "on every third day, for the purpose of alternating the day force with the night force and vice versa," were not changed. The respondents concede that the change in the wording of said § 1, already referred to, did not change its meaning, and that the words, "and shall alternate on tours of duty every third day," must be interpreted to mean the same as "and the day force and night force shall alternate on tours of duty every third day." . This concession is made advisedly. *Ollila* v. *Huikari*, 237 Mass. 54, 56. *Doggett* v. *Hooper*, 306 Mass. 129, 132, and cases cited. There is nothing in the report of the commissioners appointed to consolidate and arrange the General Laws, or in the report of the joint and special committee of the General Court on this consolidation and arrangement to indicate that there was any intention to change the meaning.

The respondents contend, however, that when the Legislature provided, in § 2 of said c. 132, that "the number of hours of duty herein stated may be exceeded," it, in effect, manifested its intention that the individual members of the platoons could be permitted to alternate on tours of duty every third day, rather than that the platoons as units should so alternate. They further contend that although the voters of the city, by adopting the statute, made it mandatory that a platoon system be established, the Legislature, according to any interpretation of the statute that excludes the 72-hour plan, has authorized the city council, in its discretion, to prevent said system from becoming operative, and that any interpretation that does not permit the adop-

tion of the 72-hour plan brings two portions of the statute into "head-on collision with each other," with the result that the statute is without force and effect; that such a result is so contrary to the apparent intent of the Legislature that any interpretation producing it should be abandoned. In support of this they contend that the clause "and the day force and night force shall alternate on tours of duty every third day," is capable of two interpretations: (1) that it may mean that the forces or platoons as units are to alternate, or (2) that the individuals comprising the forces or platoons are to alternate.

We are unable to agree with these contentions. We think it is apparent from the provisions of said c. 132 that the Legislature intended that after the permanent members of the fire department had been divided into two bodies or platoons designated as "a day force and a night force," these forces, as units, were to alternate every third day. In fact, § 1 of said chapter expressly provided that "the day force and night force" should so alternate. It is true that by § 2 of said chapter it was expressly provided that, on every third day, "for the purpose of alternating the day force with the night force and vice versa, the number of hours of duty herein stated may be exceeded." But this section went on to provide expressly that "one force shall be at liberty at all times except" in case of a conflagration. We are of opinion that this provision that the number of hours of duty "may" be exceeded was inserted for the purpose of making the provisions of said § 2 operative in a practical manner, and that it was not intended to affect the provision of said § 1 that the force should alternate on tours of duty every third day. It is unnecessary to consider whether the provisions in said § 2 as to the hours of labor which were made mandatory could be observed in the working out of a practical plan for the alternating of the two forces every third day. It is enough to say that the Legislature, in our opinion, provided that if any such difficulty was presented, the prescribed hours of labor might be exceeded, but in any event, "one force shall be at liberty at all times" except in case of a confla-

gration.   The respondents concede that while the city was operating under the 84-hour plan, it was complying with the statute.

The respondents further contend that the subject of the sentence in § 1 of said c. 132, is "The permanent members of the uniformed fire-fighting force," and that the last clause of the sentence has the same subject.   But we are of opinion that the proper construction of the statute is that when, in pursuance of it, the permanent members are divided into two bodies or platoons, no matter how divided, it is the bodies or platoons that are to alternate.   We think that the last clause in said § 1, "and the day force and night force shall alternate on tours of duty every third day," refers to the "day force and . . . night force" immediately preceding, notwithstanding a comma between the words "night force" and the word "and."   *Hopkins* v. *Hopkins,* 287 Mass. 542, 547, and cases cited.   *Kruger* v. *John Hancock Mutual Life Ins. Co.* 298 Mass. 124, 127.   Nothing in the context of said § 1 requires a different construction, and the provisions of said § 2 as to the alternating of the day force with the night force emphasize this construction.   Where statutory provisions have been adopted by a municipality, they cannot be changed by it.   They must be followed. *Adams* v. *Selectmen of Northbridge,* 253 Mass. 408, 410.

It was pointed out earlier in this opinion that said c. 132, if adopted by a city or town, resulted in a material change in the existing status of the permanent members of fire departments.   While the Legislature in its wisdom was careful to provide that one force should be at liberty at all times except in case of conflagration, the necessary corollary of this provision was that the other force should be on duty. The trial judge found that the manifest purpose of the 72-hour plan was to eliminate any 24-hour tour of duty.   But he found that, in order to bring this about, some members of the department were "shifted" from time to time from one platoon to another, from one station house to another, from one engine company to another, from one ladder company to another, with the result that the platoons did not alternate as units, and that there was no fixed or permanent

platoon, engine company or ladder company. It well may be that one purpose in enacting the statute in question was to prevent this shifting of members, and that the Legislature deemed it better to provide, as we think it did, for two forces or platoons, one of which should be on duty at all times. It well may seem that such a provision is more consistent with the efficient operation of fire departments in the performance of their highly important duties in the preservation of life and property than would be a system which permitted the alternating of the individual members, as it is contended by the respondents is permissible under the law.

In view of our conclusion, it is unnecessary to consider whether the 72-hour plan, which, in effect, reduced the hours of labor of the members of the department from eighty-four hours per week to seventy-two hours, is in violation of so much of § 59 as prevents the city from establishing the hours of labor of the members of its fire department.

It follows that the petitions for the writs of mandamus and certiorari are dismissed, and that a decree is to be entered in the equity suit enjoining the city and its officers and agents as prayed for.

*Ordered accordingly.*