NICHOLAS PARROTTA *vs.* GEORGE F. HEDERSON & others.

Suffolk. November 3, 1943. — February 1, 1944.

Present: FIELD, C.J., LUMMUS, QUA, & RONAN, JJ.

*Equity Jurisdiction,* Specific performance. *Mandamus. Auction. Notice. Waiver. Agency,* Scope of authority or employment, Custodian of municipal property. *Municipal Corporations,* Officers and agents, Property.

A suit in equity against a city for specific performance of a contract for sale of land owned by the city through foreclosure of the right of redemption from a tax title, brought after the city's custodian of the land had accepted the plaintiff's bid at an auction sale thereof conducted by the custodian in behalf of the city under St. 1938, c. 358, § 2, and after the plaintiff had seasonably paid the full amount of his bid to the city treasurer, was not barred on the alleged ground that the plaintiff's proper remedy was mandamus to compel the treasurer to execute and deliver a deed of the land to the plaintiff in accordance with the statute.

At an auction sale under St. 1938, c. 358, § 2, of land owned by a city through foreclosure of the right of redemption from a tax title, the city's custodian without invalidating the sale might waive the terms stated in the statutory notice of the sale and might accept a bid in an amount less than the amount of the down payment required to be made at the sale by the terms of the notice.

At least in the absence of fraud or collusion in an auction sale conducted under St. 1938, c. 358, § 2, by a city's custodian of property acquired through foreclosure of the right of redemption from tax titles, the fact that the amount of the bid accepted by the custodian for the property being sold was only a small fraction of its assessed value was not a ground for refusing the successful bidder relief in a suit in equity against the city for specific performance of the contract of sale.

BILL IN EQUITY, filed in the Superior Court on June 30, 1942.

A demurrer to the bill was overruled by decree of *Collins*, J. The suit was heard by *Broadhurst*, J., by whose order a final decree was entered "that the defendant Hederson, as city treasurer, on behalf of the city of Chelsea, execute and deliver to the plaintiff a deed conveying to him" the land in question, and that the plaintiff have costs against the defendant city. The defendants appealed from both decrees.

*J. Israelite*, City Solicitor, for the defendants.

*R. W. Frost*, (*F. R. Breath* with him,) for the plaintiff.

QUA, J. This bill is brought against the city of Chelsea, Hederson its treasurer, and McCarthy, who has been appointed in accordance with St. 1938, c. 358, § 1 (amended by St. 1939, c. 123 [see St. 1941, c. 296, § 2]), custodian of its property acquired by foreclosure of tax titles and, after the 1939 amendment, of property acquired under G. L. (Ter. Ed.) c. 60, § 80, as amended. The object of the bill is to secure specific performance of a contract for the purchase and sale of about forty-five hundred square feet of vacant land, the buildings upon which have been torn down. The contract was entered into between the plaintiff and the city on May 14, 1942, when the plaintiff was the highest bidder at an auction conducted under the authority of § 2 of the statute by McCarthy as custodian and auctioneer. The defendants appeal from an interlocutory decree overruling their demurrer and from a final decree in favor of the plaintiff.

Section 2 of the statute provides that such a custodian, "acting on behalf of the city or town," may sell any property in his custody at public auction, first sending to the former owner of record a notice which shall contain a description of the property and state the date, time, place, terms, and conditions of the sale, and posting a similar notice in two or more public places. The section further provides that failure to send or post the notice "or any insufficiency in the notice . . . shall not invalidate the title to any property sold"; that the custodian "may reject any and all bids . . . if in his opinion no bid is made which approximates the fair value of the property"; and that upon pay-

ment by the purchaser to the city or town of the amount of a bid "accepted by the custodian," the treasurer shall "on its behalf" execute and deliver any instrument necessary to transfer the title of the city or town to any property sold.

The city had acquired title to the land in 1941 through the foreclosure by decree of the Land Court of rights of redemption from a tax title. Before the sale to the plaintiff, McCarthy, as custodian, "complied with all the requirements of" the 1938 statute. The notice of sale stated that $200 was to be paid in cash, or a certified check would be required at the time and place of sale, "full balance in thirty (30) days to the Treasurer of the City of Chelsea." The right was reserved to reject any and all bids. Reference was made to McCarthy for "further particulars." At the sale, McCarthy accepted the plaintiff's bid of $100. McCarthy then demanded, and the plaintiff paid, the sum of $20. The plaintiff paid the balance of $80 to the treasurer within the time allowed. The property had been assessed for $10,250 in 1941 before the buildings had been torn down, and in 1942 the land alone was assessed for $2,250.

The defendants' first contention is that the plaintiff cannot maintain this bill because he has a complete and adequate remedy at law by a petition for a writ of mandamus to compel the treasurer to execute a deed to the plaintiff in accordance with the duty imposed upon the treasurer by the statute of 1938. This contention cannot prevail.

Attempts to define in a few words the grounds upon which a petition for a writ of mandamus may be founded are necessarily incomplete and not wholly satisfactory. A rough generalization applicable to most cases against public officers which do not involve title to office might be that mandamus is available to secure the performance of a public duty at the instance of any person who as a citizen or otherwise is legitimately concerned in having it performed. See *Attorney General* v. *Boston*, 123 Mass. 460, 479; *Brewster* v. *Sherman*, 195 Mass. 222; *Bancroft* v. *Building Commissioner of Boston*, 257 Mass. 82, 84; *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91; *Tuckerman* v. *Moynihan*, 282 Mass. 562; *D. N. Kelley & Son, Inc.* v. *Selectmen of Fair-*

*haven,* 294 Mass. 570, 574; *Cape Cod Steamship Co.* v. *Selectmen of Provincetown,* 295 Mass. 65, 69; *Department of Public Utilities* v. *Trustees of the New York, New Haven & Hartford Railroad,* 304 Mass. 664. But compare *Warner* v. *Mayor of Taunton,* 253 Mass. 116. The plaintiff's claim in this case springs wholly out of the personal contract which he made with the city at the sale through McCarthy, who was acting as the city's agent under the terms of the statute. The duty resting upon the city and its officers is the duty to perform the city's contract with the plaintiff. A mere contractual obligation does not often create the kind of public duty performance of which is enforced by mandamus, even though performance necessarily devolves upon some public officer. In *Tuckerman* v. *Moynihan,* 282 Mass. 562, at page 569, this court said that mandamus "is not, except in rare instances, a remedy for the enforcement of contractual obligations," citing a passage from 18 R. C. L. at page 130, wherein it is said that any other doctrine "would necessarily have the effect of substituting the writ of mandamus in place of a decree for specific performance, and the courts have, therefore, steadily refused to extend the jurisdiction into the domain of contract rights." See now 34 Am. Jur., Mandamus, § 58. In *Lexington* v. *Mulliken,* 7 Gray, 280, this court held that refusal of a town treasurer to pay a debt due from the town was not a proper cause for mandamus, since the creditor had a complete remedy by ordinary process. See *Wheelock* v. *Auditor of Suffolk County,* 130 Mass. 486; *Police Commissioner of Boston* v. *Boston,* 279 Mass. 577, 585–586; High on Extraordinary Remedies, § 25. In *Parrott* v. *Bridgeport,* 44 Conn. 180, 182, the Supreme Court of Errors said, "But the writ of mandamus has never been considered as an appropriate remedy for the enforcement of contract rights of a private and personal nature and obligations which rest wholly upon contract and which involve no questions of public trust or official duty." Many cases are collected in 38 C. J. at page 588.

In resting this decision upon the ground here taken we do not wish to be understood as now accepting the general proposition that a bill in equity cannot be maintained,

especially in one of the commonly recognized branches of
equity jurisdiction, because there is a remedy by mandamus.
Mandamus is itself classed as one of the extraordinary reme-
dies.   The statement has been made in numerous cases by
many judges that a petitioner cannot have mandamus, if
any other adequate and effectual remedy is available.   This
statement is couched in forms sufficiently broad to include
equitable remedies among those to which resort must first
be had.[1]   It has frequently been held that a petitioner can-
not have mandamus where he has a statutory remedy in
equity.[2]   And this principle has been applied in cases where
the statutory remedy in equity is not confined to any par-
ticular set of facts but is in the nature of a more or less gen-
eral extension of equity jurisdiction to a new subject matter,
as in the instance of suits by ten taxable inhabitants under
G. L. (Ter. Ed.) c. 40, § 53, to prevent the illegal expenditure
of money by a city or town.[3]   The only case in this Com-
monwealth of which we are aware that suggests any support
for the broad proposition for which the defendants contend
is *Cox* v. *Malden & Melrose Gas Light Co.* 199 Mass. 324, but
that case states no such general proposition, cites no case in

---

[1] See, for example, *Carpenter* v. *County Commissioners of Bristol*, 21 Pick.
258; *Selectmen of Gardner* v. *Templeton Street Railway*, 184 Mass. 294, 297–
298; *McCarthy* v. *Street Commissioners of Boston*, 188 Mass. 338, 340; *Finlay*
v. *Boston*, 196 Mass. 267, 270; *Attorney General* v. *New York, New Haven &
Hartford Railroad*, 197 Mass. 194, 199; *Crocker* v. *Justices of the Superior
Court*, 208 Mass. 162, 164; *Butler* v. *Directors of the Port of Boston*, 222 Mass.
5, 12–13; *Thomas* v. *Municipal Council of Lowell*, 227 Mass. 116, 120; *Daly*
v. *Mayor of Medford*, 241 Mass. 336, 339; *Cambridge Savings Bank* v. *Clerk of
Courts*, 243 Mass. 424, 427; *McLaughlin* v. *Mayor of Cambridge*, 253 Mass.
193, 199; *Peckham* v. *Mayor of Fall River*, 253 Mass. 590, 592; *Bancroft* v.
*Building Commissioner of Boston*, 257 Mass. 82, 86; *Bushell* v. *Mayor of
Malden*, 260 Mass. 476, 481; *Godfrey* v. *Building Commissioner of Boston*, 263
Mass. 589, 593; *School Committee of Lowell* v. *Mayor of Lowell*, 265 Mass.
353, 355; *Direct-Mail Service, Inc.* v. *Commissioner of Public Works*, 295
Mass. 9, 10; *C. & H. Co.* v. *Building Commissioner of Medford*, 303 Mass.
499, 500; *Amory* v. *Assessors of Boston*, 306 Mass. 354, 357; *Tranfaglia* v.
*Building Commissioner of Winchester*, 306 Mass. 495, 497; *Mengel* v. *Justices
of the Superior Court*, 313 Mass. 238, 243–244.   A somewhat more cautious
statement is found in *County Commissioners of Essex* v. *Mayor of Newburyport*,
252 Mass. 407, in *Dana* v. *Hovey*, 264 Mass. 79, 84, and in *Police Commissioner
of Boston* v. *Boston*, 279 Mass. 577, 581.

[2] *Perry* v. *Hull*, 180 Mass. 547.   *Selectmen of Gardner* v. *Templeton Street
Railway*, 184 Mass. 294, 298.   *Attorney General* v. *New York, New Haven &
Hartford Railroad*, 197 Mass. 194, 199.   *Cheney* v. *Coughlin*, 201 Mass. 204,
207.   *Department of Public Utilities* v. *Trustees of the New York, New Haven
& Hartford Railroad*, 304 Mass. 664, 675.

[3] *Finlay* v. *Boston*, 196 Mass. 267, 270.   *Amory* v. *Assessors of Boston*, 306
Mass. 354, 357–358.   *Hurley* v. *Lynn*, 309 Mass. 138, 141.

favor of it, and seems to us to have been decided simply on the ground that a bill in equity (which that case was) could not be maintained on the facts. See pages 326–327. There is also a strong intimation that the bill could have been maintained, if the plaintiff had had a contract, which the present plaintiff has. There is nothing in the references to the *Cox* case in *Department of Public Utilities* v. *Trustees of the New York, New Haven & Hartford Railroad*, 304 Mass. 664, at pages 672, 675, or in *Amory* v. *Assessors of Boston*, 306 Mass. 354, at page 358, that was intended to extend the *Cox* case beyond what was actually decided in that case. There is a conflict of authority among other jurisdictions. See 34 Am. Jur., Mandamus, § 51; *George S. Chatfield Co.* v. *Reeves*, 87 Conn. 63; *Baltimore University* v. *Colton*, 98 Md. 623, 636; *Ex parte Baldwin*, 291 U. S. 610, 619. With this word of caution we leave this subject where we find it.

And we are not concerned in this case with the further question whether a bill for specific performance of a contract to convey real estate belongs to that "limited class of cases where jurisdiction is concurrent" so that "a court of equity can take jurisdiction where a plain, adequate and complete remedy at law exists." *Parkway, Inc.* v. *United States Fire Ins. Co.* 314 Mass. 647, 651.

The defendants further contend that the sale was invalid because McCarthy sold the property for $100, with a deposit of $20, instead of insisting upon the deposit of $200 mentioned in the notice. But we think that the statutory requirement of a notice which is to contain the terms and conditions of sale does not absolutely bind the custodian to refuse to sell, if he does not get a bid within the stated conditions. It is expressly provided that an entire "failure" to give any notice at all, or "any insufficiency in the notice sent or posted shall not invalidate the title to any property sold." The custodian may "reject any and all bids," but upon the payment of "the amount of a bid accepted by the custodian" the treasurer shall deliver the deed. The terms and the notice are evidently to be prepared by the custodian. Acting in good faith and within reason, he may make such terms as he sees fit. He could have inserted in the notice

the terms which he accepted at the sale. Or, if he had re-
jected the bid, he could have immediately prepared a notice
of another sale upon the terms which he actually accepted.
The terms of sale are left by the statute wholly within his
control. We think he can waive the terms of the notice and
accept at the sale such bids as he deems advantageous. A
sale by a custodian under the statute is not analogous to a
sale by a mortgagee under a power of sale. The custodian is
an agent with full authority selling the property of an owner
which is free to do what it pleases with its own. There is no
mortgagor or other person whose rights in the property must
be protected. The requirement of notice in the 1938 statute
as originally enacted seems to have been little, if anything,
more than a matter of grace to the former owner, who might
be interested in repurchasing, and a mere direction to the
custodian in order to secure a minimum of advertising.
After the 1939 amendment it may serve the further pur-
pose of giving the former owner an opportunity to contest
the validity of the deed to the city or town under G. L.
(Ter. Ed.) c. 60, § 80, as amended, before the title becomes
further complicated by another sale. A question as to the
possibility of purchasers having been kept away from the
sale by a notice in terms more onerous than those accepted
at the sale no more arises than would such a question arise
in the case of a sale by any absolute owner of real estate at
auction through an agent or auctioneer of his own choice
on terms which the owner deemed satisfactory. See *White*
v. *Dahlquist Manuf. Co.* 179 Mass. 427, 432. The case of
*Russell* v. *Bon,* 221 Mass. 370, cited by the defendants, has
no application here. See *Bailey* v. *Aetna Ins. Co.* 10 Allen,
286; *Model Lodging House Association* v. *Boston,* 114 Mass.
133, 139; *Antoine* v. *Commonwealth Trust Co.* 266 Mass.
202, 207.

There seems a wide disparity between the assessed value
of the land (admitted in evidence without objection) and
the sale price. The reasons for this do not appear. The
low price may have been due to the assessment on the
vacant land that remained after removal of the buildings
being so high that the land had little sale value — a condi-

tion not unknown in some of our municipalities at the present time. There is no pleading, evidence, or contention that the sale was fraudulent or collusive in any respect. Therefore we have nothing to do with the price. See *Gadreault* v. *Sherman*, 250 Mass. 145, 150.

We do not see why Hederson or McCarthy as individuals should have been made parties to this bill in equity to enforce a contract of the city. But no question about this has been raised by any of the defendants in the demurrer or at any time, and even if the decree ran against the city alone it would be the duty of the proper officers to carry it out. *Commonwealth* v. *Hudson, ante,* 335, 348.

> *Interlocutory decree affirmed.*
> *Final decree affirmed with costs.*