COMMONWEALTH vs. KENNETH SPANN.

Suffolk.   December 4, 1980. — March 12, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Practice, Criminal*, Probable cause hearing, Promise by prosecutor, Disclosure of statements by witness, Instructions to jury, Verdict. *Evidence*, Identification of victim. *Identification. Jury and Jurors.*

Statements by an assistant district attorney who was seeking a continuance of the date for a defendant's probable cause hearing that it was his intention to proceed with the probable cause hearing on the later date, that "as far as he knew" there would be a probable cause hearing, and that he "did not think there would be any problem in giving" a written assurance that the hearing would be held on that date did not constitute a promise on which the defendant reasonably could have relied not to indict the defendant before the hearing. [144-146]

At a murder trial, there was no showing of such extreme suggestiveness in the procedure by which a witness identified a photograph of the victim as the person whose body he had seen in the hallway outside the defendant's apartment as to require suppression of the identification. [146-148]

There was no support in the record of a murder trial for the defendant's claim that the prosecutor had had a duty to reduce witnesses' statements to writing and that he was prejudiced by the prosecutor's failure to reduce to writing and furnish to the defendant copies of statements by witnesses who identified a bloodstained gold ring found in the defendant's bedroom as similar to one regularly worn by the victim. [148-150]

At a murder trial, the judge's instructions with respect to reasonable doubt, considered as a whole, could not have caused the jury to convict on a lesser standard than proof beyond a reasonable doubt although it would have been better for the judge to have avoided the one-sided warning that "if an unreasonable doubt or a mere possibility of innocence should be deemed enough to prevent conviction, then practically everyone charged with a crime would go free." [150-151]

There was no merit to a defendant's argument that a jury's verdict was less than unanimous on the basis that one of the jurors, on being polled, answered, "I say he is guilty with reservations," and on being questioned again, answered, "Guilty." [151]

INDICTMENT found and returned in the Superior Court Department on May 25, 1979.

The case was tried before *Lappin*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Willie J. Davis* for the defendant.

*Jeremiah P. Sullivan*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant appeals from his conviction of murder in the second degree and from the denial of his motion for a new trial. We affirm the conviction and the order denying the motion for a new trial. We find no occasion to disturb the verdict pursuant to our power and duty under G. L. c. 278, § 33E, to review the entire case. See *Commonwealth* v. *Davis*, 380 Mass. 1, 14-17 (1980).

We set forth briefly the evidence against the defendant, leaving certain details for presentation when we discuss the defendant's specific contentions on appeal. The victim's body was found in Franklin Park, Boston, in the early morning of February 5, 1979. She had received a massive blow to the head with a blunt object and died of stab wounds, many of which were inflicted with great force. One Dean Richardson testified that on February 3, while he was at the defendant's apartment, the defendant said that he had killed a woman and that her body was in the lower inside hallway outside the defendant's apartment. Richardson, at the defendant's urging, went to the upper hallway and looked down over the banister, and saw a woman's body. On February 4, the defendant asked Richardson to help him get rid of the body, and Richardson refused. On April 10, Richardson, who had become fearful of the defendant, reported the February 3 incident to the police and later that day identified a picture of the victim as the person whose body he had seen in the hallway. In addition to Richardson's testimony, there was evidence that (a) traces of blood of the victim's blood type were found in the hallway and in the defendant's automobile, (b) her injuries were consistent with the use of a knife owned by the

defendant, and the use of a post from the banister outside the defendant's apartment, (c) the impression of a partial footprint of a sneaker on the victim's coat found near her body was similar to the impression made by a sneaker owned by the defendant, (d) a bloodstained gold ring similar to one regularly worn by the victim, but not found on her body, was found under a rug in the defendant's bedroom, and (e) the defendant had scratches on his neck and was wearing a band-aid on February 2, the date of the victim's disappearance.

1. The defendant argues that the judge should have dismissed the indictment because the prosecution improperly denied the defendant a probable cause hearing. In support of his motion to dismiss the indictment, the defendant presented an affidavit from the attorney who had been his counsel (not his counsel at trial and on appeal) in the District Court of Dorchester where he was arraigned on May 4, 1979. At that time, the judge set May 14, 1979, as the date for a probable cause hearing. On May 11, 1979, according to the affidavit, an assistant district attorney requested the defendant's counsel to agree that the probable cause hearing be rescheduled for a date in June. Defense counsel agreed to June 8 "provided that the Suffolk County District Attorney, on behalf of the Commonwealth, prior thereto was not going to seek an Indictment from the Grand Jury in the Suffolk County Superior Court, which would circumvent the probable cause hearing in the District Court." The affidavit continues, stating that the assistant district attorney "assured me that it was his intention to proceed with the probable cause hearing as agreed to on June 8, 1979." We read the assistant district attorney's answer as at best equivocal. It certainly was not an express promise that there would be no indictment.

The affidavit recites that on May 14, 1979, the date originally set for the probable cause hearing, defense counsel and the assistant district attorney spoke at the District Court of Dorchester. Defense counsel requested a letter from the assistant district attorney "confirming, in writing, that it

was his intention, as far as he knew, to proceed with the probable cause hearing in the District Court of Dorchester. He stated then and there that he would send me such a confirmation letter, and did not think there would be any problem in giving me such a letter." No such letter was ever received. An indictment against the defendant was returned on May 25, 1979, thus abrogating the otherwise applicable statutory requirement that a probable cause hearing be held. G. L. c. 263, § 4.

When the motion to dismiss was heard in the Superior Court on the day trial commenced, former defense counsel, who had handled the case in the District Court, was not available to testify. The prosecutor made no attempt to offer evidence from the District Court prosecutor nor did he deny the accuracy of the representations in the affidavit. The judge treated the matter on the affidavit and denied the motion.

The defendant rightly does not argue that he was entitled to a probable cause hearing in all events. See *Lataille* v. *District Court of E. Hampden*, 366 Mass. 525, 531 (1974). He argues that the prosecution promised that his client would not be indicted before a probable cause hearing had been held. He points to the statutory guarantee that a probable cause hearing cannot be continued for more than "ten days at any one time against the objection of the defendant." G. L. c. 276, § 35. He argues that his agreement to a continuance for more than the ten-day statutory period (from May 14 to June 8) was conditioned on the prosecutor's promise not to indict the defendant in the interim. If such a promise had been made, and if the defendant had relied on it to his detriment, we would hold the prosecution to its promise and would reject any attempt to repudiate that promise. See *Commonwealth* v. *Tirrell*, 382 Mass. 502, 511-512 (1981); *Commonwealth* v. *Benton*, 356 Mass. 447, 448-449 (1969); *Commonwealth* v. *St. John*, 173 Mass. 566, 569-570 (1899). See also *Lataille* v. *District Court of E. Hampden, supra* at 531 n.6. Holding the prosecution to its promise would not, however, necessarily re-

quire dismissal of the indictment. Granting the defendant
a probable cause hearing would constitute specific perform-
ance of the promise, and the defendant did not seek that
form of relief.[1]

We conclude that the statements attributed to the District
Court prosecutor did not amount to a promise that an in-
dictment would not issue. What defense counsel should
have obtained, preferably in open court at the time the
probable cause hearing was continued to June 8, was an ex-
press statement that an indictment would not be sought un-
til after the probable cause hearing was held.[2] What de-
fense counsel sought and received instead was a much more
limited assurance, one which contained no guarantee of the
sort the defendant argues he obtained. The prosecutor was
asked to write that "as far as he knew" there would be a
probable cause hearing, and the prosecutor answered that
he "did not think there would be any problem in giving"
such an assurance. The limited request ("as far as he
knew") and the uncertain response ("did not think there
would be a problem") shows that both the prosecutor and
defense counsel knew that higher authority within the dis-
trict attorney's office might reach a determination to seek
an indictment. No commitment was given not to indict the
defendant before the scheduled probable cause hearing.
There was no promise on which the defendant reasonably
could rely.

2. The defendant asserts that the photographic iden-
tification of the victim by Dean Richardson was unduly sug-
gestive and conducive to a prejudicially mistaken identifica-
tion. In this respect, the defendant seeks to have us apply
the constitutional principles applicable to the photographic
identification of a suspect to a similar identification of a

---

[1] There is no explanation in the record why the defendant waited to
press his motion to dismiss, filed in August, 1979, until the day scheduled
for trial.

[2] This discussion occurred before the effective date, on July 1, 1979, of
the Massachusetts Rules of Criminal Procedure.

deceased victim of a crime. He cites no case in which a court has taken such a position, and we have found none. We recently considered a similar claim in *Commonwealth v. Simmons, ante* 46 (1981), in which the defendant challenged as impermissibly suggestive the identification procedures used in the viewing of his automobile. We rejected the argument that the same constitutionally prescribed procedures used for identifying suspects applied to procedures used in identifying inanimate objects. *Id.* at 49-50, 51-52. We did recognize, however, that in "an extreme case," the degree of suggestiveness of an identification procedure concerning an inanimate object might be so great as to contravene a defendant's due process rights (*id.* at 51), but concluded that the defendant there failed to present such a case (*id.* at 52-53).

Considering the evidence presented on the defendant's motion to suppress in light of our *Simmons* opinion, we find no ground for suppressing Richardson's photographic identification of the victim. The judge appropriately conducted a voir dire on the defendant's motion to suppress Richardson's identification of the victim. He denied the motion.[3] Richardson testified at the hearing that he was at the defendant's apartment on February 3, 1979, and went over to the stairs and looked down over the banister. He saw the body of a dead woman. On April 10, a police officer showed Richardson a photograph of two men and two women and asked him whether he saw in the photograph the woman whose body he had seen in the hallway. He immediately identified one of the women as the victim. A police officer testified that the police had no other photographs of the victim before her death to show to Richardson. The officer further testified that he asked Richardson only whether he recognized anyone in the photograph.

---

[3] He also stated that he would make appropriate findings in support of his rulings. No findings appear in the record in this court. Neither party makes a point of their absence from the record.

Practical considerations are important in a situation such as this. Clearly, photographs must be used in the identification of persons who have been dead for more than several days. What the police may do depends on what photographs of a victim are available. If the police had had a single photograph of the victim, better practice would have been to present an array of photographs for the witness to consider.

As in the identification of an inanimate object such as a motor vehicle, the identification of a victim is not as crucial an element of the proof as is a direct identification of a defendant as the person who committed a crime. *Commonwealth* v. *Simmons, supra* at 51-52. Any inadequacy in the procedures followed and the failure to use other procedures reasonably available are arguments that can be presented to the jury. *Id.* at 52. Barring an extreme case of suggestiveness, perhaps involving improper statements by the police in the course of such a procedure, a motion to suppress the photographic identification of a victim need not be allowed.

3. The defendant has failed to prove that the prosecutor had a duty to reduce statements of certain witnesses to writing, and that, if there were such a duty, he was unfairly prejudiced by the prosecutor's failure to prepare and turn over such statements. The record does not show the allowance of the defendant's motion that the statements of witnesses be reduced to writing. Nor does it appear, although it is claimed, that the prosecution agreed to reduce witnesses' statements to writing.

The defendant's argument concerning the prosecution's alleged breach of its discovery obligations centers on the identification by several witnesses of a gold ring found in the defendant's apartment as similar to one worn regularly by the victim. There was testimony that the ring was not on the victim's body when it was found. Defense counsel grants that, from the discovery provided to him, he knew before trial that a bloodstained gold ring had been found in the defendant's bedroom. At trial, several witnesses identified the ring as similar to a plain gold ring usually worn by

the victim. Prior to trial, the Commonwealth provided the defendant with a written statement of the first witness who identified the ring. The statement, however, did not refer to any identification of the ring. When that witness testified that the ring was similar to one she had seen on the victim's hand and the prosecution offered the ring in evidence, defense counsel did not object that the witness's written statement, furnished on discovery, made no reference to the ring.

All defense counsel could do to rebut testimony identifying the ring, and he did it at trial, was to bring out that the ring had no features distinguishing it from any other gold ring of the same type. In opposing the defendant's motion for a new trial, the prosecutor maintained that he had told defense counsel a week or two before trial that the ring would be identified as similar to one worn by the defendant. It is doubtful that there was any basis on the record for the judge to rule that the prosecution had made a commitment to reduce witnesses' statements to writing.

Even if the defendant had made out a case of prosecutorial misconduct in failing to furnish copies of witnesses' statements identifying the ring, he has not shown, as he would have to, that he was prejudiced by the prosecutor's alleged lapse. In *Commonwealth* v. *Gilbert*, 377 Mass. 887, 894 (1979), there was a clear failure of the prosecutor to disclose material changes in a witness's statement (changes that were more damaging to the defendant than the written statements previously furnished to defense counsel). We held that there was no abuse of discretion in the judge's implicit finding that the defendant was not prejudiced by the prosecutor's lapse. In the case before us, the inference was obvious that the prosecution would seek to prove that the ring was similar to one normally worn by the victim. Even if defense counsel did not learn until the commencement of trial that such testimony would in fact be offered, and assuming that the prosecutor had failed to fulfil a duty to disclose that such testimony would be offered, we see no basis for concluding that the defendant was unfairly prejudiced

by the late disclosure of the fact that such evidence would be offered. See *Commonwealth* v. *Gilbert, supra* at 894-895. There is no showing, for example, that the defendant could have materially improved his cross-examination of the witnesses who identified the ring. *Id.* at 895.

4. The defendant objected to a portion of the judge's charge in which he discussed reasonable doubt. The judge told the jury: "Now, we use the word of 'reasonable,' and the choice of that word is not by accident. Because if an unreasonable doubt or a mere possibility of innocence should be deemed enough to prevent conviction, then practically everyone charged with a crime would go free." In *Commonwealth* v. *Williams,* 378 Mass. 217, 232-235 (1979), we considered a somewhat similar charge that also undertook to define reasonable doubt in negative terms.[4] Noting criticisms by other courts of such a charge, we said in that case that a charge of this character, standing alone, was deficient because it warned of the consequences of holding the prosecution to too high a standard of proof without a balancing warning of the harm to the defendant inherent in holding the Commonwealth to too low a standard. Such a charge also has the deficiency of focusing jurors' attention on the consequences of their verdict rather than on their obligation to decide the case on the evidence before them. *Id.* at 234. However, the charge was not an inaccurate statement of the law. *Id.* It becomes a matter of reversible error if the charge as a whole does not present the matter of proof beyond a reasonable doubt in a balanced way.

In the *Williams* opinion, we concluded that there was no error in the instructions on reasonable doubt considering the entire charge. *Id.* at 234-235. The same circumstance exists here. The judge charged the jury that the defendant was entitled to the presumption of innocence and that proof

---

[4] The charge in the *Williams* case was arguably more prejudicial to the defendant than the charge involved here. There, the judge warned the jury to deal firmly with crime and said that "practically every criminal would be free" if the prosecution were required to prove guilt beyond a mere possibility of innocence or beyond all doubt. *Id.* at 232.

beyond a reasonable doubt required proof to a moral certainty on each of the essential elements of the crime charged. Although the better choice would have been not to give the one-sided warning, the judge's instructions, considered as a whole, could not have caused the jury to convict on a lesser standard than proof beyond a reasonable doubt. *Id.* at 233, 234-235. *Commonwealth* v. *Carballo*, 381 Mass. 227, 229 (1980).

5. There is no merit to the defendant's argument that the jury's verdict was less than unanimous. The foreman reported a verdict of guilty of murder in the second degree. The judge granted the defendant's motion that the jury be polled. After nine jurors answered guilty, the tenth juror answered, "I say he is guilty with reservations." The judge immediately asked, "What was your answer, madam, guilty or not guilty?" and the juror answered, "Guilty." Defense counsel raised no objection at that time.

We see no basis for claiming that the jury verdict was not unanimous. Certainly, the judge's question did not intrude into the deliberative processes of the jury or any juror. He properly questioned the juror in a most limited way in order to understand whether the juror's answer showed that she agreed with the verdict as announced. See *Commonwealth* v. *Hebert*, 379 Mass. 752, 754 (1980). The juror affirmed the verdict. There is no suggestion that the judge was coercive or undertook in any way to affect the juror's judgment. See *Commonwealth* v. *Jackson*, 457 Pa. 237, 241 (1974). The absence of a prompt objection by defense counsel supports this view.

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*