JOHN DOE & another[1] vs. DISTRICT ATTORNEY FOR THE
PLYMOUTH DISTRICT & others.[2]

No. 89-P-863.

Suffolk. October 12, 1990. - January 3, 1991.

Present: PERRETTA, KASS, & FINE, JJ.

*Practice, Criminal*, Agreement between prosecutor and defendant, Plea.
*Practice, Civil*, Action in nature of mandamus. *Mandamus. District Attorney.*

Statement of considerations underlying a court's determination whether to
enforce a plea bargain between an accused and the government. [673-674]

An action in the nature of mandamus was not an appropriate choice of
procedural means for criminal defendants to attempt to establish the
terms of an alleged plea bargain and the extent of the government's
performance of that bargain. [674-676]

The framework of an ongoing criminal proceeding, rather than a separate
civil proceeding, was the appropriate forum for criminal defendants to
raise questions of the existence, scope, and enforceability of their al-
leged plea bargain with the government. [676-678]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 8, 1989.

A motion to dismiss was heard by *Walter E. Steele*, J.

*Walter B. Prince (John F. Herlihy, Jr.*, with him) for the
plaintiffs.

*Judy G. Zeprun*, Assistant Attorney General, for the Dis-
trict Attorney for the Plymouth District & others.

KASS, J. Trafficking in more than 100 grams of cocaine
carries a mandatory ten-year sentence. G. L. c. 94C,
§ 32E(*b*)(3). Confronted by that charge and the severe pun-
ishment that would be visited upon them should they be con-

---

[1]James Roe.

[2]Superior Court and the Commonwealth of Massachusetts.

victed, Doe and Roe, the plaintiffs, undertook to trade cooperation with the office of the district attorney for the Plymouth District for lesser charges.[3] Doe and Roe claim they have performed their part of the plea bargain but that the government has not. They brought an action in the nature of mandamus (see G. L. c. 249, § 5, and Mass.R.Civ.P. 81(b), 365 Mass. 841 [1974]) to require the government to perform its side of the agreement.[4] The government moved to dismiss the action: *first*, because mandamus did not lie; and, *second*, because the rights of Doe and Roe could be as well protected in the context of the primary criminal case as in a collateral civil action. A Superior Court judge allowed the motion to dismiss, and judgment entered accordingly.

For purposes of appeal, there is essential agreement about the facts to be assumed. The cooperation of Doe and Roe would consist of orchestrating and, if necessary, participating in drug transactions which would enable the government to net bigger fish. In two separate deals which Doe and Roe helped to stage, the government arrested drug dealers and confiscated large quantities (e.g., one pound) of cocaine. That cooperation, the plaintiffs allege, was to result in a reduction of charges which would enable the government to recommend three-year sentences. Thereupon, Doe and Roe insist, the government offered a recommendation of zero days of incarceration if Doe and Roe would cooperate in ensnaring

---

[3]Both the brief of the plaintiffs and that of the government (as did the plaintiffs' complaint) speak of an exchange of cooperation for "leniency in sentencing." When there is a mandatory minimum sentence, however, there is no scope, as a practical matter, for lenient sentencing. We assume that the agreement was that the Commonwealth, in exchange for cooperation, would reduce the charges against Doe and Roe. We may infer that indictments were brought because the plaintiffs refer to a pending criminal action in which they are the defendants. Doe and Roe have obscured the docket number or numbers of the pending criminal case or cases because they desire and — for reasons which will become apparent — need to preserve their anonymity.

[4]The complaint also asked for preliminary injunctive relief against continuation of the prosecution against Doe and Roe and against any disclosure of their identities and the nature of their cooperation.

a still larger fish in the narcotics sea. With the assistance of a third party, they enabled the authorities to apprehend a target who possessed five kilograms of cocaine. Doe and Roe complain that, after putting them at considerable risk, the government not only refused to take steps that would diminish their sentences but turned· on them and indicted them for trafficking in the five kilograms found in possession of the target dealer.

1. *Enforceability of the plea bargain.* That the government is required to abide by the terms of plea agreements it has entered into is settled. It is, perhaps, more compelling that a public pledge be redeemed than a private one. *Santobello* v. *New York,* 404 U.S. 257, 261-262 (1971). *Commonwealth* v. *Benton,* 356 Mass. 447, 448 (1969). *Commonwealth* v. *Smith,* 384 Mass. 519, 522 (1981). *Commonwealth* v. *Santiago,* 394 Mass. 25, 28 (1985). *United States* v. *Gonzalez-Sanchez,* 825 F.2d 572, 578 (1st Cir.), cert. denied, 484 U.S. 989 (1987). Smith, Criminal Practice and Procedure § 1208 (2d ed. Supp. 1990). Contrast *Dunbrack* v. *Commonwealth,* 398 Mass. 502, 506 (1986) (prosecution did not renege on a promise).

Before principle turns into sanction, i.e., before a court enforces a plea agreement, the court is to determine that the accused had reasonable grounds to rely on the plea bargain and that the accused relied on the plea bargain to his detriment. *Commonwealth* v. *Tirrell,* 382 Mass. 502, 512 (1981). *Commonwealth* v. *Smith,* 384 Mass. at 521-522. *Commonwealth* v. *Santiago,* 394 Mass. at 28. *Commonwealth* v. *Kelleher,* 28 Mass. App. Ct. 915, 916 (1989). The Commonwealth suggests that the only sort of detrimental reliance that can support enforcement of a plea bargain is a guilty plea, but this is surely too narrow a view. Opinions that have described a guilty plea as the decisive act constituting reliance on a plea agreement have been written when defendants either had entered a guilty plea or had not changed position in any material respect in reliance on a claimed plea bargain. See *Mabry* v. *Johnson,* 467 U.S. 504, 507 (1984); *Commonwealth* v. *Kelleher,* 28 Mass. App. Ct. at 916; *United States*

v. *Abbamonte*, 759 F.2d 1065, 1071-1072 (2d Cir. 1985); *State* v. *O'Leary*, 128 N.H. 661, 664 (1986). The concerns about fairness which underlie the requirement that the government abide by its agreements are solidly engaged once an accused person has relied to his detriment upon a plea agreement, even if that occurs before entry of a guilty plea. See *Commonwealth* v. *Smith*, 384 Mass. at 522; *United States* v. *Papaleo*, 853 F.2d 16, 18-19 (1st Cir. 1988).

Whether Doe and Roe had entered into a plea agreement, whether they had reasonably relied on it to their detriment, and whether the government has delivered what was reasonably due them under the agreement, were questions which required an evidentiary hearing. *United States* v. *Calabrese*, 645 F.2d 1379, 1390 (10th Cir.), cert. denied, 451 U.S. 1018 (1980), and 454 U.S. 831 (1981). *United States* v. *Gonzalez-Sanchez*, 825 F.2d at 578. Cf. *Blaikie* v. *District Attorney for the Suffolk Dist.*, 375 Mass. 613, 615-616 (1978). The central question for decision is: in what framework shall such a hearing be conducted?

2. *Appropriateness of mandamus.* An action in the nature of mandamus is not an appropriate choice of procedural means by Doe and Roe to attempt to establish the terms of their plea bargain and the extent of the government's performance of that bargain. Although, in a rough sense, Doe and Roe seek to have a public official, the district attorney, do his duty, and mandamus is a proceeding to secure the performance of a public duty, *Parrotta* v. *Hederson*, 315 Mass. 416, 418 (1944), it is a remedy that is to be used only as a last resort, when nothing else would work. Expressed more elegantly, "the writ of mandamus is an extraordinary remedy granted only to prevent a failure of justice and in instances where there is no other adequate and effectual remedy." *Coach & Six Restaurant, Inc.* v. *Public Works Commn.*, 363 Mass. 643, 644 (1973). See also *Parrotta* v. *Hederson*, 315 Mass. at 420; *Lutheran Serv. Assn. of New England, Inc.* v. *Metropolitan Dist. Commn.*, 397 Mass. 341, 344 (1986).

Equitable remedies, if available, are among those to which a party must turn before resorting to an action in the nature

of mandamus. *Parrotta* v. *Hederson*, 315 Mass. at 420. *Coach & Six Restaurant, Inc.* v. *Public Works Commn.*, 363 Mass. at 644-645. What Doe and Roe seek, specific performance of a contract, falls into a familiar category of equitable relief. Mandamus is, therefore, the wrong road because another route is available. See also *Kenyon* v. *Chicopee*, 320 Mass. 528, 532-535 (1946), which illustrates the use of an equitable remedy to enjoin repetitive criminal prosecutions. One reason to eschew mandamus is enough, but, if more were needed, one might recognize previous judicial admonitions against expansive use of that extraordinary remedy in novel applications, *Reading* v. *Attorney Gen.*, 362 Mass. 266, 269 (1972), and too liberal use of the discretion inherent in the decision to issue an order in the nature of mandamus, *Lutheran Serv. Assn. of New England, Inc.* v. *Metropolitan Dist. Commn.*, 397 Mass. at 345. A civil action in the nature of mandamus was the procedure used in an unsuccessful attempt to establish and enforce a plea bargain in *Blaikie* v. *District Attorney for the Suffolk Dist.*, 375 Mass. 613 (1978), but the propriety of mandamus was never put in question by the pleadings or the briefs and was not a subject of discussion in the opinion.

For sixteen years the writ of mandamus has been dead, see Mass.R.Civ.P. 81(b), 365 Mass. 841 (1974), and the parties' debate about whether a complaint in the nature of mandamus fits in this case may be an arid one. Under Mass.R.Civ.P. 2, 365 Mass. 733 (1974), after all, there is one form of action known as a "civil action," and we look to the function of the complaint, not its label. Cf. *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Engrs., Inc.*, 396 Mass. 818, 823 (1986). Mandamus, however, persists as an idea in the statute books, viz., G. L. c. 249, § 5, and the use of the word "mandamus" produces familiar historical reverberations which are heard as a call to a government official to perform a clear cut duty and as limiting the remedy. Lawyers are likely to invoke mandamus now and then, and, therefore, we have discussed the attempt to employ it here,

aware that, in the context of modern pleading, resolution of the question does not produce momentous consequences.

3. *Appropriateness of a separate civil proceeding.* Significant consequences do attach, however, if Doe and Roe may maintain an independent civil action in any form to probe the boundaries of an alleged plea bargain made in connection with a criminal proceeding.

The advantage of a civil proceeding to Doe and Roe is the wider scope of discovery under the rules of civil procedure, compared with that available under the rules of criminal procedure. Compare Mass.R.Civ.P. 26-34, 365 Mass. 772-792 (1974), and as amended,[5] with Mass.R.Crim.P. 14, 378 Mass. 874 (1979). Within the bounds of a criminal proceeding, Doe and Roe could not serve notices to produce documents approaching the breadth of that which they might serve under Mass.R.Civ.P. 34, 365 Mass. 792 (1974), nor is there under the rules of criminal procedure the scope of depositions available under the civil rules.

The disadvantages of a separate civil proceeding to the government are: the delays in the primary criminal proceedings which a secondary civil proceeding will infallibly produce; and the risk that Doe and Roe's discovery might expose confidential material which would jeopardize police investigations and would expose agents and informers. From the standpoint of the courts, it is wasteful of judicial resources to have the bundle of facts from which the criminal action arose generate more than one litigation. One may imagine a worse case scenario in which multiple defendants conduct multiple civil proceedings collateral to a primary criminal proceeding. Beyond simple efficiency, justice will be better served if the judge who sits on the primary criminal case deals with disputed issues growing out of it which involve the proof or the parties.

With the single exception of *Blaikie* v. *District Attorney for the Suffolk Dist.*, 375 Mass. 613 (1978), the Massachusetts cases disclose that questions of the existence, scope, and

---

[5]References to where amendments to those rules subsequent to 1974 appear in the reports of Massachusetts decisions are omitted.

enforceability of plea bargains are dealt with as part of the primary criminal case, through motions to dismiss indictments or through postconviction motions. See, e.g., *Commonwealth* v. *Benton*, 356 Mass. at 448; *Commonwealth* v. *Tirrell*, 382 Mass. at 503-504; *Commonwealth* v. *Spann*, 383 Mass. 142, 145 (1981); *Commonwealth* v. *Smith*, 384 Mass. at 521; *Commonwealth* v. *Santiago*, 394 Mass. at 25. As to the *Blaikie* case, as we have previously noted, the procedural framework was never put in issue and not discussed; it is not, therefore, authority on the question of whether a separate proceeding may be maintained to enforce a plea bargain.

We are of opinion that whether there was a plea bargain among Doe and Roe and the government, what the scope of the bargain was, what performance and detrimental reliance there was by either party, and how the bargain, if there was one, should be enforced are issues to be tried within the framework of the underlying criminal proceeding. Rule 12(c)(1) of the Massachusetts Rules of Criminal Procedure suggests the time and manner of the inquiry. If a defendant offers to plead guilty, the judge is to ask, and the parties are to inform the judge, of the substance of any agreements. Mass.R.Crim.P. 12(c)(1), 378 Mass. 868 (1979). In a situation such as Doe and Roe claim to be in, they would offer a plea of guilty to an offense less than that charged, explaining to the judge that this comports with an agreement they had with the government.[6] The question could also be raised by a motion to dismiss the indictments on the ground that they violate the claimed plea bargain. See *United States* v. *Gonzalez-Sanchez*, 825 F.2d at 577. If there was an agreement, the government carries the burden of showing the defendants have not performed. *Id.* at 578.

Either way, the judge in the criminal case then proceeds to an evidentiary hearing about the circumstances of the plea

---

[6]Should the judge ultimately conclude that there was no plea bargain, that the accused had not relied on it to his detriment, or that the government was excused from performance by the accused's failure to perform, the accused ought to have an opportunity to withdraw the guilty plea offered and to substitute a plea of not guilty. See Mass.R.Crim.P. 12(d), 378 Mass. 869 (1979).

bargain, including exploration of whether a failure by the defendant to live up to the bargain relieves the government from its side of the deal. *Ibid.* In recognition of the essentially contractual rights which Doe and Roe seek to vindicate, the judge may authorize the use of interrogatories, notices to produce documents, and depositions, i.e., methods that have overtones of civil procedure. Unlike the civil context, however, use of discovery methods will be more constrained, and Doe and Roe will have the burden of articulating a connection between information they seek and facts they expect to establish. The judge shall have the usual discretion to curb discovery that is excessively broad or burdensome. The judge will wish to be specially alert to tailor discovery so as to prevent Doe and Roe from foraging generally in the Commonwealth's evidence or in such a way as will expose agents and informers. Although the norm should be to inquire into the agreement in open court, see Wright, Federal Practice and Procedure § 175.1, at 642-644 (2d ed. 1982), the judge may examine in camera material over which there is contention to assure that the government's legitimate interests are not jeopardized. Cf. *Commonwealth* v. *Lugo*, 23 Mass. App. Ct. 494, 501-505 (1987), *S.C.*, 406 Mass. 565, 571-574 (1990).

The judgment dismissing Doe and Roe's civil action is affirmed. The underlying case shall proceed to trial, and the plea bargain issues may be explored along the lines described in this opinion.

*So ordered.*