COMMONWEALTH *vs.* JOHN DOE.

Suffolk. February 3, 1992. - June 10, 1992.

Present: NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal,* Agreement between prosecutor and defendant, Dismissal, Sentence.

In a criminal case in which the defendant sought to compel the Commonwealth to adhere to its alleged agreement to reduce the charges in exchange for the defendant's assistance to law enforcement officials, certain of the judge's findings with respect to the defendant's motive were clearly erroneous [819-820] and the other findings did not support his conclusion that the defendant reasonably relied on an implied agreement [820-821]; further, the claim was premature; as a result, the judge's order reducing the charges was vacated [821-822].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 21, 1991.

The case was reported by *Nolan,* J.

*John Coffey,* Assistant District Attorney (*Susan Underwood,* Assistant District Attorney, with him) for the Commonwealth.

*Bernard Grossberg* for the defendant.

NOLAN, J. Prior to his trial on four indictments charging trafficking in cocaine, the defendant, believing that the Commonwealth reneged on an agreement to reduce the charges against him in return for his assistance to law enforcement officials, filed a motion for an order to compel the Commonwealth to adhere to its alleged agreement with him. The judge allowed the motion, holding that fairness required the Commonwealth to adhere to its agreement on which the defendant reasonably relied to his detriment. The Commonwealth then sought relief from the judge's order, pursuant to G. L. c. 211, § 3 (1990 ed.), from a single justice of this

court who reserved and reported the matter to the full court. We agree with the Commonwealth's contention on appeal that the judge had no proper legal basis to reduce the charges against the defendant over the Commonwealth's objection. We therefore vacate the judge's order.

The Suffolk County grand jury returned four indictments against the defendant, three charging him with trafficking in cocaine in excess of one hundred grams, each of which carries a minimum mandatory sentence of ten years, and one charging him with trafficking in cocaine in excess of fourteen grams, which carries a minimum mandatory sentence of three years.[1] These indictments arose out of three separate sales of cocaine to State police Trooper Paul Damery, who was acting in an undercover capacity, as well as an inventory search of the defendant's automobile at the time of his arrest. After learning from the arresting officer that the defendant was interested in cooperating with the police, Trooper Damery and other police officers initiated a series of meetings with the defendant during which time the defendant considered whether to cooperate with police. The defendant eventually agreed to assist the police after he retained counsel and counsel indicated that he had no objections to Trooper Damery's contacts with the defendant. The defendant then attempted to assist law enforcement officials over the next few months, during which Damery visited the defendant in jail several times. The defendant made more than fifty telephone calls to Damery during this time.

From his initial conversations with Damery, the defendant "consistently" pressed to get some specific promise about what benefits he would derive from his cooperation with the police. Damery always responded by stating that the defendant would only "get credit for" information that led to something productive, such as arrests or the seizure of narcotics. While Damery consistently stated that he was not authorized

---

[1] General Laws c. 94C, § 32E (*b*) (1) (1990 ed.), requires a sentence of from three to fifteen years for trafficking in excess of fourteen grams of cocaine, while § 32E (*b*) (3) requires a sentence of from ten to twenty years for trafficking in excess of one hundred grams of cocaine.

to bargain with the defendant, Damery assured the defendant that, if he provided productive information, Damery would confer with the assistant district attorney and the defendant's counsel to negotiate the credit which the defendant would receive in return for his cooperation.

Over the course of several months, the defendant gave information to Damery about alleged cocaine dealers and attempted to arrange meetings for Damery with cocaine dealers. None of the information provided by the defendant, however, proved to be productive, and the meetings arranged by the defendant were unsuccessful. According to the defendant, drug dealers were chary of doing business with him while he was incarcerated. Although his bail was reduced to $50,000 at his arraignment, the defendant was still unable to secure bail.

The defendant eventually persuaded his former roommate to help him by assisting Trooper Damery. According to Trooper Damery's testimony, the special arrangement with the defendant's roommate was geared toward addressing the defendant's bail situation. The defendant believed that he could be more productive, and thereby increase his chances of reducing his sentences, if his bail were reduced and he was able to get out of jail and return to the streets where he would be better able to set up meetings for Damery with drug dealers.[2] The defendant's roommate eventually provided information that resulted in the arrest of an individual for trafficking in cocaine, three counts of trafficking over fourteen grams and two counts of trafficking over twenty-eight grams. The Commonwealth apparently never took steps,

---

[2] The defendant testified as follows on cross-examination:

THE PROSECUTOR: "And do your remember having conversations with [Trooper Damery] regarding 'Get me out. I can't do anything from the can. You've got to get me out of jail'?"

THE DEFENDANT: "Yes. It was very difficult for me to conduct myself in jail. Both of us were aware of that."

THE PROSECUTOR: "And the reason is that no one wants to deal with someone who is sitting in the can on a drug charge —"

THE DEFENDANT: "Well, it's very hard to contact people. You have to go in person, you know. It's hard to call everybody there."

however, to reduce the defendant's bail. His roommate's information was the only productive assistance that the defendant was able to provide to the Commonwealth.

In allowing the defendant's motion to compel the Commonwealth to adhere to its agreement with the defendant, the judge stated that the Commonwealth's position in this case was that the defendant expected only a bail reduction in return for his productive assistance. The judge concluded that this argument was "specious" because the defendant's bail had already been reduced at his arraignment without the intervention of the Commonwealth. The judge concluded instead that the defendant was clearly seeking a reduction only in the severity of the penalty that he was facing. The judge then found, in the attendant circumstances and the conduct of the parties, that they impliedly contracted that the defendant would get his charges reduced if he supplied any information which led to the arrest of a drug dealer or the seizure of narcotics, and the judge concluded that the defendant's provision of productive information through his roommate was encompassed within this implied agreement. As a result, the judge reduced the defendant's indictments so that instead of ten-year mandatory sentences he would be subject to five-year mandatory sentences, which the judge believed was "the only pragmatic way to remedy the breach of the Commonwealth's implied promise to this defendant."[3]

Absent some legal basis for doing so, a judge may not reduce the charges against a defendant over the Commonwealth's objection. *Commonwealth* v. *Gordon*, 410 Mass. 498, 503 (1991). Enforcement of a prosecutor's promise which, on principles of contract law, would be an enforceable contract is one legal basis upon which such relief may be granted. See *Commonwealth* v. *Santiago*, 394 Mass. 25, 28 (1985); *Commonwealth* v. *Smith*, 384 Mass. 519, 521-522 (1981). Even when there is no enforceable obligation to en-

---

[3]The judge actually dismissed so much of the indictments under G. L. c. 94C, § 32E (*b*) (3), as charged offenses punishable by more than the mandatory five-year sentences pursuant to G. L. c. 94C, § 32E (*b*) (2), which concerns trafficking in excess of twenty-eight grams of cocaine.

force a prosecutor's promise, we would consider, on the grounds of fairness, whether a defendant's reasonable reliance to his detriment on statements of the prosecutor's representatives obliges the Commonwealth to adhere to the defendant's expectations. See *Commonwealth* v. *Mr. M.*, 409 Mass. 538, 543-544 (1991); *Commonwealth* v. *Smith, supra* at 522. "The touchstone for determining whether a defendant has been improperly denied the advantages he expected . . . is whether that defendant has reasonable grounds for reliance on his interpretation of the prosecutor's promise, and whether the defendant in fact relied to his detriment on that promise." *Commonwealth* v. *Santiago, supra* at 28. While there is no dispute in this case concerning whether the defendant suffered any detriment, the parties differ over whether the defendant's expectations were reasonable.

In reviewing a judge's determination as to a pretrial motion, such as a motion to suppress or the motion in this case, the judge's subsidiary findings of fact supporting such determination will not be disturbed absent clear error. *Commonwealth* v. *Dunn*, 407 Mass. 798, 804 (1990). "Moreover, we accord substantial deference to the judge's ultimate findings." *Id.* at 805. Nevertheless, we conclude that several of the judge's findings were clearly erroneous and that the record does not support his conclusion that the defendant's expectation, that his roommate's productive information would result in a reduction of the charges, was reasonable.

The judge's finding that the defendant did not desire a reduction in his bail is clearly erroneous. The judge mischaracterized the Commonwealth's true position in this case, which was that only the defendant's efforts through his roommate, and not his efforts in general, were geared toward a bail reduction. The defendant himself testified that his motive in seeking his roommate's help was to reduce his bail as well as his sentences.[4] The defendant testified that he sought

---

[4]The defendant testified as follows on direct examination:

DEFENSE COUNSEL: "Now, what was your understanding as to the benefit that you were to receive as a result of the arrest through [the roommate]?"

THE DEFENDANT: "I would get a bail reduction, and a reducement [*sic*] of sentencing."

this bail reduction so that he could be more effective in his attempts to set up meetings with drug dealers for his ultimate objective of reducing his sentences. See note 2, *supra*. The judge's inference that the defendant could not have been interested in a bail reduction because his bail had already been reduced at his arraignment contradicts the defendant's own testimony.[5] Additionally, while the judge stated that he credited the testimony of Trooper Damery in full, the judge's finding on the bail reduction issue apparently ignored Damery's testimony that the credit that the defendant would get for productive information through his roommate's efforts, as opposed to his own efforts, was geared only toward a reduction in the defendant's bail.

The judge's other findings in this case do not support his conclusion that the defendant reasonably relied on an implied agreement with the Commonwealth to reduce his sentences in exchange for productive assistance. The judge in this case found that the Commonwealth gave "no explicit promise of a sentence reduction" to the defendant, but only created an implicit understanding that the defendant would be given "consideration" for "production." Contrast *Commonwealth v. Mr. M.*, *supra* at 541 (defendant relied on "on the street" sentencing recommendation); *Doe v. District Attorney for the Plymouth Dist.*, 29 Mass. App. Ct. 671, 672 n.3 (1991) (defendant relied on exchange of cooperation for "leniency in sentencing"). Consideration, in its ordinary and not its legal sense, means a factor in forming a judgment or decision, and

---

[5]The following colloquy occurred on direct examination:

DEFENSE COUNSEL: "And did you ever seek a bail reduction?"

THE DEFENDANT: "Yes: at my arraignment."

DEFENSE COUNSEL: "Besides your arraignment — I mean, when the case was going, as a result of the [the roommate's] information —"

THE DEFENDANT: "Yes; I tried to."

DEFENSE COUNSEL: "Was that successful [in] any way?"

THE DEFENDANT: "No; it wasn't, in any way."

not a specific benefit.[6] In the circumstances of this case, it was unreasonable for the defendant to conclude that any productive information which he provided would lead to anything more concrete than consideration by the assistant district attorney, and the defendant has not shown that the Commonwealth failed in this promise. See *Commonwealth* v. *Spann*, 383 Mass. 142, 146 (1981) (no promise on which defendant could reasonably rely where he received only limited assurance).

Even if the defendant had reasonably relied to his detriment on a promise that the Commonwealth would seek a reduction in his sentences, it is not clear at this stage of the proceedings that the Commonwealth has reneged on any such promise. The judge's conclusion that the only way in which the defendant could secure relief in sentencing was to reduce the charges against him is factually erroneous. While that was the situation in *Doe* v. *District Attorney for the Plymouth Dist.*, *supra* at 672 n.3, there was only one trafficking charge pending against each defendant in that case. In the present case, however, the defendant faces three minimum mandatory ten-year sentences and one minimum mandatory three-year sentence. Consequently, the defendant in this case could conceivably face consecutive sentences of up to at least thirty-three years. The judge, in his discretion, also could impose sentences higher than the mandatory minimum sentences mandated by G. L. c. 94C, § 32E (*b*). See *Commonwealth* v. *Molino*, 411 Mass. 149, 155-156 (1991). If, after the defendant were to plead guilty or be found guilty of these charges, the Commonwealth were then to recommend that the defendant only serve the minimum mandatory sentences *concurrently*, for a sentence of ten years, the Commonwealth would certainly be adhering to a promise to seek a reduction in the defendant's sentences. Even if the defend-

---

[6]Consideration is "[t]hat which is, or should be, considered as a ground of opinion or action; . . . a taking into account . . . ." Webster's New Int'l Dictionary 569 (2d ed. 1959).

ant had such an implied agreement, therefore, his claim would be, at best, premature.

We therefore vacate the judge's order. The case is to proceed in the Superior Court.

*So ordered.*